WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.
February, 1878.

## HASKIN v. TELLER.

*In the matter of the final announcement of* RICHARD
H. TELLER, *administrator of the estate of* WILLIAM
TAYLOR, *deceased.*

A collector of an estate, afterward appointed administrator, sold a portion
of the assets to next-of-kin, taking their notes for the price, which
were never paid, and charged himself in his account as administrator
with the amount of the purchase price. *Held* that, on a final account-
ing, he was entitled, as against assignees of the distributive shares
respectively, to credits for the amount of the notes, with interest from
their dates to one year after he received letters of administration, and
that he should be chargeable, in his account, with interest on them to
that time only.

The administrator having deposited the moneys as realized, on call in a trust
company, by which he was allowed only 4 per cent. interest; *Held,* that
he should be charged with interest at that rate only, notwithstanding
an agreement had been entered into among those interested in the
estate, including himself in the capacity of guardian of infant next-of-
kin, for an immediate distribution, which was not effected; since the
Surrogate's Court can not take cognizance of nor enforce such an
agreement.

The commissions of the administrator are to be deducted as of the date of
the settlement of his account, and not as of the date of filing it.

IN November, 1865, Richard H. Teller was appointed
collector, &c., of the intestate estate, pending a con-
troversy as to his appointment as administrator, he
being the general guardian of an infant next-of-kin.
In June, 1867, he was duly appointed such administra-
tor. There was litigation in regard to the estate, and
various charges were incurred by the administrator for
personal expenses and for counsel fees in the several
controversies. In January, 1869, an agreement was

entered into by the parties in interest, for an imme-
diate distribution of the fund remaining in the hands
of the administrator.   This agreement was signed by
Teller, not as administrator, but as general guardian of
the infants on whose behalf as such guardian he had
been appointed administrator.   The distribution thus
agreed upon was not made, and subsequently proceed-
ings for a final accounting were commenced in this
court, and the account of proceedings was brought
down to April 13th, 1869.   From this account, it ap-
peared, among other things, that the administrator
charged himself with the proceeds of a sale of furniture
to the amount of $2,285.74.   This sale was made
under authority granted by the Surrogate to him as
collector on the 28th day of May, 1866.   It was sold
to Mary L. Van Tuyl and Sophia Van Tuyl, two of the
next-of-kin of the intestate, who were married women,
and each of whom gave her promissory note to the
collector, payable on demand, with interest, for
$1142.87, being one-half the total price.   The admin-
istrator in his account credited himself with so much
money paid to them as next-of-kin, without interest.
In 1869, these ladies sold and assigned their interest in
the estate of the intestate to William Nelson and John
B. Haskin, and the same is now claimed by the exec-
utors of said Nelson, now deceased, and by the said
Haskin.   The matter of the accounting was referred
to an auditor, who reported as follows:

"That the accounts of the said administrator pre-
sented by him are correct, with the following excep-
tions; that is to say:

"*First.*   That the amounts credited by the said ad-

ministrator in schedule C as being counsel fees paid to William H. Anthon, amounting to $3,305.86, and the further sum of $100 credited for the same purpose in schedule D, should not be allowed, but, in my opinion, in lieu thereof, said administrator should be allowed for such counsel fees the sum of $1000, the said items being excessive and unwarranted by the sum of $1405.86.

"*Second.*    That the charges made in schedule C for administrator's expenses, under date of February 21st, 1867, amounting to $502.94, and the further charge, made under date of April 6th, 1869, amounting to $277, should not be allowed, but, in my opinion, in lieu thereof, there should be allowed for such expenses the sum of $400, such being excessive and unwarranted by the sum of $379.94.

"*Third.*    That the credits made by said administrator to himself of two notes, viz.; one dated May 25th, 1866, made by Mary L. Van Tuyl for $1142.87, with interest, and the other, dated May 28th, 1866, made by Sophia J. Van Tuyl, for $1142.87, with interest, should not be allowed, and said administrator should replace them with cash to the amount represented by them, with interest at the rate of 7 per cent. per annum from their dates severally.

"*Fourth.*    That the said administrator mingled the funds of the said estate with his own, and also with the moneys held by him as guardian of Isaac Vanderpoel Taylor, and also received interest upon the same, but has not accounted therefor, and in my opinion he should be charged with interest upon such balances remaining in his hands and so mingled and used from time to time, at the rate of 7 per cent. per annum.

" That the amount of such interest on the 13th day of April, 1869, the time of dating the account, was $417.58.

" *Fifth.* That by the terms of an agreement, dated January 28, 1869, between the adult next-of-kin and the infants, by their guardians, and John B. Haskin and William Nelson, as purchasers of shares of the estate, and the said administrator, it was agreed that immediate distribution of the personalty should be made ; but the administrator has, in violation, neglected to make such distribution, and has retained the balance of principal, which was, on the 13th day of April, 1869, as follows :

" Amount conceded by the account filed,
(balance $8166.54, less interest credited, $417.58),      $7,748.96
" Excessive credit for William H. Anthon,      1,405.86
"     "     " expenses,      379.94
" Notes of Van Tuyl, without interest,      2,285.74

" Total amount,      $11,820.50

" *Sixth.* The following is a summary statement of the account as the same should, in my opinion, be settled :

" The administrator should be charged :

" 1. With amount of schedule A,      $128,858.24
" 2. With interest on money used and mingled by him to April 13th, 1869,      417.58
" 3. With interest on sales to Van Tuyls, represented by the notes, being $2285.74, from May 28th, 1866, to November 22d, 1877,      1,838.17

"4. With interest on balance of principal
sum undistributed of $12,470.50,
less Van Tuyl notes of $2285.74,
being $10,184.76, from April 13th,
1869, to November 22d, 1877,                       6,139.09

"Total charges,                                 $137,253.08

"The administrator should be credited as follows:

"1. With amount of schedule C, $12,522.74
  "Less credits disallowed in
      schedule C,                 1,685.80
                                ————————    $10.836.94
"2. With amount of schedule D, $18,166.53
  "Less credit disallowed,         100.00
                                ————————      18,066.53
"3. With amount distributed to next-of-
      kin and their assigns,                    85,877.50
"4. Allowances to Jenkins,                         100.00

  "Total credit,                            $114,880.97

"Total charges,                             $137,253.08
"Total credits,                              114,880.97

"Balance in administrator's hands,           $22,372.11

"*Seventh.* That the balance which should be charged against said administrator is $22,372.11, subject to his commission and his expenses upon this accounting, and the auditor's fees and charges, to be fixed by the Surrogate and paid by said administrator.

"Dated November 22d, 1877."

To this report exceptions were taken.

HASKIN v. TELLER.

. R. D. HARRIS, *for the administrator.*

JOHN B. HASKIN, *guardian, in person, and by* ABEL CROOK, *of counsel.*

THE SURROGATE.—I can see no reason to disturb the report of the auditor as to the "First" and "Second" findings. The testimony was somewhat conflicting in some respects and in others vague. I think he has done substantial justice in regard to those items.

I feel constrained, however, to differ from him as to the "Third." It was held by this court in Hitchcock v. Marshall (2 *Redf.*, 174), that a Surrogate's Court had no power to decree payment to an assignee of a distributive share, but must direct it to be made to the distributee himself, and that the assignee must seek relief in some forum having adequate power to grant it. If that proposition be correct, then it seems to me there can be no difficulty in disposing of this question. In that case, the administrator should be directed to pay the Van Tuyls their distributive shares, less the amount of these notes. That would seem to be equitable and just. The administrator has charged himself in his account with this sum of $2285.74, and the effect of the auditor's decision is to deprive him of the credits he claims in having paid to each of these next-of-kin so much on account of their shares, and to leave him to recover the amounts of the notes, if he can, from those to whom the amounts really belong. I can perceive no necessity for such circuity of action. Under our statutes these ladies, on complying with certain conditions, could, after the lapse of a year from the granting of administration, have sued the administrator to recover their distributive shares. Is

21

it not clear that he, in such case, could set off and be allowed these notes, which he held in his representative character ? It would scarcely answer for them to say, " You had no right to take these notes." They were taken by him as collector and subsequently passed into his hands as administrator, with enlarged powers in regard to them. The case of Smith v. Kearney (2 *Barb. Ch.*, 533), to which I am referred by counsel for the administrator, is not strictly analogous, as the claim was against the deceased ; but the case of Jeffs v. Woods (2 *Peere Williams*, 128), cited by the chancellor, is more nearly in point. There the executor was permitted to retain out of the legacy a debt due to him personally from the legatee. If, therefore, a personal claim could be retained as against a legatee or distributee, the reason for such retention in this case is stronger from the fact that the debts were due to the administrator as such. So much of the auditor's report as refuses to permit the amount of these notes to be credited to the administrator must, therefore, be set aside. But, inasmuch as the Van Tuyl ladies were not entitled to their distributive shares until June 26th, 1868, being one year after the date of letters of administration, I think the administrator should be charged with interest on their respective notes down to that date only, and that they are liable to him for such interest, and, therefore, the amounts of the notes and interest should then be deducted from their shares as of those dates.

I concur with the auditor as to the liability of the administrator for interest as determined by the " Fourth" paragraph of his report.

The auditor has allowed interest on a balance of principal sum of $10,184.76 from April 13th, 1869, to November 22d, 1877 (date of his report), at the rate of 7 per cent. In this I think he was in error. The fund was generally kept on deposit in a trust company, yielding an interest of 4 per cent. There were a few brief periods when the administrator kept some part of the money in a savings bank, of which he was an officer, without interest, until he could go and deposit it with the trust company. It must be remarked that the accounting proceedings were pending during the whole period, and it was impossible for him to foresee when they would be terminated and how soon he should be called on to pay over. Under these circumstances, he could not be required to do more than to have the money on call, at such rate of interest as he could obtain. It strikes me that the method adopted by him was all that could be required. It would be unjust to charge him seven, when, at the most, he only received four per cent. If, however, it is sought to justify the charge of interest at the legal rate on the ground that he should be so charged because he did not proceed at once to distribute the balance, in pursuance of the agreement of January, 1869, I consider it a sufficient answer to say that this court has no power to award damages for a breach of contract. Interest should, therefore, be charged at the rate of four per cent. only.

The administrator claims the right to deduct his commissions as of the date of filing his account. The statute (2 R. S., 93, § 58), directs that "on the settlement of the accounts of an executor or administrator,

the Surrogate shall allow him for his services" certain commissions. No such "settlement" as is contemplated by the statute can be considered made until the decree fixing the rights of the respective parties shall have been entered. The Surrogate must first ascertain, by adjusting the account, the amount on which the allowance is to be based.

It is conceded that the administrator should be credited with two payments made by him since filing his account, to wit: one of $25.60, with interest from December 17, 1870, and another of $573.52, with interest from December 28, 1870, but I think the rate of such interest should be limited to four per cent.

The auditor's fees, as fixed by law, and the other expenses of the proceeding must be paid out of the fund, and the administrator must have an allowance of $10 per day for services of counsel in preparing for and attending upon the accounting, the number of days to be shown by affidavit.

A decree must be entered according to the views above expressed.