WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURRO-
GATE.—July, 1881.

DIXON v. STORM.

*In the matter of the accounting of* JACOB STORM, *sur-
viving executor, etc., of* ABRAHAM STORM, *deceased.*

The common law rule, that a legacy is, in general, payable at the end of
one year after the testator's death, and the modification of that rule,
contained in 2 *R. S.*, 90, § 43, are inapplicable to the case of a legacy
given by the execution of a power of appointment contained in the
testator's will.
The testator, by his will, after certain bequests, gave the residue of his es-
tate, real and personal, to his wife for life; empowered his executors
to sell any of the real estate, with her consent; directed them, as soon
as practicable after her death, to sell all the real estate, and pay one-
half the proceeds, and one-half his personal estate, to an appointee to
be named in her will. The widow died, leaving a will appointing H.
and A. to receive $5,000, under the power. They had purchased some
of the real estate during her life-time, and had given a purchase-money
mortgage, which was foreclosed before she died, leaving a deficiency
of $3,000, for which judgment was entered after her decease. Mean-
while, the appointees had assigned their legacy to W. *Held,*
1. That the testator's intent was that the legacy of his widow's appointee
should vest immediately upon her death, and that interest then began
to run; and that this result was not affected by the fact that sufficient
real estate had not been sold to make the payment.
2. That the judgment of $3,000 must be set-off against the legacy; the de-
ficiency being liquidated before the widow's death, and the assignee
having actual or constructive notice of the facts.
*It seems,* that the assignee, for an antecedent debt, of an insolvent legatee is
liable in equity to a set-off of his assignor's indebtedness, against the
legacy, even though the latter is not yet payable.
One of the executors handed to his co-executor, whom he supposed to be
solvent, $1,200 of the trust funds, on the suggestion of the recipient,
who misapplied the amount and died insolvent, that he could use the
same to the advantage of the estate. *Held,* that the surviving executor
was liable to the estate for the loss.
Adair *v.* Brimmer, 74 *N. Y.*, 539,—distinguished.

HEARING of objections to an executor's account.

The testator's will, which was proved in 1862, after bequeathing certain legacies, gave to his wife a life estate in the residue of his real and personal property. The *eighth* clause empowered his executors to sell any of his real estate, on obtaining the written consent thereto of his widow. The *ninth* clause read : "All the rest and residue of my estate, real and personal, . . . . . I direct to be disposed of as follows : 1st, I hereby authorize and empower my executors, as soon after the decease of my said wife as may be practicable, to sell and dispose of all my real estate . . . . . ; and one-half of the net avails thereof, with one-half part of the avails of my moneyed assets, and other personal property not otherwise heretofore devised, I give and bequeath to such persons and for such purposes as my said wife shall lawfully direct and order, in and by her last will and testament ; " and directed his executors to pay accordingly. The widow, Julia Storm, died May 25, 1878, leaving a will, by which she appointed Hiram W. Dixon and Angeline Dixon to receive $5,000, as she was empowered to do by her husband's will. Previously, the executors, with the written consent of the widow, had sold some of the real estate of the testator to the Dixons, and had taken from them a bond and mortgage for $10,000 to secure a part of the purchase money. This mortgage became due and was foreclosed, and the premises were sold during the widow's life-time, leaving a deficiency, on the sale, of about $3,000, for which judgment was entered several months after her death. Her will was contested, but was finally admitted to probate in the fall of 1878. In the meantime, and about June, 1878, the Dixons assigned their legacy, appointed to be paid to them by Julia Storm's will, to

Wesley Dixon.   It was claimed that these legatees were insolvent, and that they assigned their legacy in payment of a precedent indebtedness.

During the life-time of the executor Haight, the accounting executor, supposing him then to be entirely solvent, handed over to him $1,200, money belonging to the estate, on his suggestion that he could use it to the advantage of the estate; which sum, Haight dying insolvent, was lost.

Wm. F. Purdy, *for executor.*

Caleb Griffin, *for Wesley Dixon, assignee.*

H. C. Griffin and E. T. Lovett, *for legatees.*

L. T. Yale, *for executors of Julia Storm.*

The Surrogate.—At first, I was inclined to think that the legacies, appointed to be paid by the will of Julia Storm, became due only at the time of the final conversion of the real estate, remaining unsold at the time of her death, and that interest was recoverable only from that time ; but on reflection I have come to the conclusion that they became due at her death.   The common law rule was that legacies, directly given out of the testator's own estate, were due one year after the death of the testator ; and such is still the rule, the time of payment, only, being changed by our statute (2 *R. S.*, 90, § 43).   That statute and the common law rule, I think, are inapplicable to the case of a legacy given by the execution of a power of appointment.  The legacy in question vested, and became due and payable, on the death of the donee of the executed power.   It seems to me that it is very much the same as if the will of Abraham Storm had be-

queathed the use of $5,000 to his widow for life, with remainder to the Dixons. On her death it would, in that case, have been due and payable to them at once, and the fact, that it might have been necessary to convert real estate, in order to obtain means of payment, I think, can make no difference. The most of the real estate had been converted at the time of the widow's death, and a large portion of the estate consisted of bonds and mortgages. Having determined that, ordinarily, a legacy given by appointment is due and payable at the death of the person exercising the power, I think it still due and payable then, although all of the real estate had not then been sold (Wood v. Penoyre, 13 *Ves.*, 326 ; Sitwell v. Bernard, 6 *Id.*, 539 ; Wheeler v. Ruthven, 74 *N. Y.*, 428).

Where real estate is devised to be sold, for the purpose of distributing the money, Lord THURLOW says, in Hutchin v. Mannington (1 *Ves.*, 366), "it is clear that it will neither depend upon the caprice of the trustee to sell, for that would be contrary to all common sense, nor upon his dilatoriness : in some way it may be sold immediately ; but I should not inquire when a real estate might have been sold with all possible diligence ; for it might the very next day, or that very evening ; and therefore the court always, in such a case, considers it as sold the moment the testator is dead ; for where there is a trust, that is always considered here as done, which is ordered to be done." This was approved by the Master of the Rolls, in Elwin v. Elwin (8 *Ves.*, 547).

Here, no definite words are used by the testator, with any deliberate purpose of fixing the period at which the enjoyment of the legacies was to commence, other than

at the death of the widow. By the eighth clause of the will, the executors had power to sell any of the real estate, on the written consent of the widow, and more than half of it was, and the whole of it might have been, so sold. By the ninth clause, they were to sell all that remained, " as soon after the decease of my said wife as may be practicable." From my examination of the cases, I am satisfied that the language employed indicates such an intention on the part of the testator, as to the time of payment of these legacies, as to bring them within the rule that they vested, and were payable at once on the death of the widow. If I am right as to the time when the legacy became due, the fact that some portion was to be derived from real estate yet unsold, causing some deficiency of assets, would not prevent its being then payable, although payment was impracticable ; and interest from that time must be allowed.

Regarding this point as correctly settled, then it follows that the set-off of the judgment against the legacy should be allowed. The bond and mortgage were due before the death of the widow ; a foreclosure and sale had been had, and the deficiency ascertained. The claim was therefore liquidated. The Dixons and their assignee had actual or constructive notice of the facts, and the legacy must be reduced by the amount of the set-off (Haskin v. Teller, 3 Redf., 316).

It was alleged, on the argument, and I did not understand it to have been denied, that the Dixons were, at the time of the assignment, insolvent, and made the assignment to pay a debt due the assignee. If that is true, then another and an equitable ground for allowing the set-off is furnished, even if the legacy were not due

(Smith *v*. Felton, 43 *N. Y.*, 419).    In view of the novelty of the question above determined, and of the importance of the matter to the parties, if the insolvency of the assignors and the object of the assignment are not conceded, I will so far open the case as to admit proofs upon those subjects only.

I think the executor, Storm, is liable for the $1,200 which he handed over to his executor Haight, on his suggestion that he could use it to the advantage of the estate.    Haight misapplied or wasted it, and died insolvent.    At the time, he was regarded as solvent and a man of considerable means, although the fact proved to have been otherwise.    I am referred to the case of Adair *v*. Brimmer (74 *N. Y.*, 539), as an authority excusing Captain Storm from liability.    In that case, certain stocks and bonds were intrusted to one of the executors, by the others, to sell, on his promise to pay the proceeds into the office where the business of the estate was transacted, which he failed to perform.    "He received *these proceeds* in his capacity as executor, and *they never came into the possession or under the control of his co-executors.*"    While, here, Storm handed over to his co-executor *money* which belonged to the estate, and it is lost.    There is a marked distinction between the two cases.    The case cited does not alter the well-established rule (*Redf. Prac.* [2 ed.], 506).    The executors were also trustees, and as to the latter the rule is even more stringent (*Id.*, 509 ; Bates *v*. Underhill, 3 *Redf.*, 365).

Decreed accordingly.