Amount withdrawn from Greenwich Savings Bank October 18,
1906 ........................................................ $4,095 88
Amount withdrawn from German Savings Bank October 18, 1906　2,372 34
Interest on deposit as per supplemental account............... 102 45
Interest on $2,372.34 at 2½ per cent. from October 18, 1906, to
July 21, 1909 ............................................... 163 67
Interest on $350 at 2½ per cent. from April 25, 1908, to July
21, 1909 ................................................... 10 83
Interest on $100 at 2½ per cent. from December 13, 1906, to
July 21, 1909 .............................................. 6 55
Furniture, jewelry, and proceeds of sale, as per schedule A of
supplemental account .................................... 66 00
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　—————
　　　　Total ............................................... $6,817 72

The administratrix should also be charged with her cause of action against the Lincoln Trust Company for the sum of $2,000, with interest thereon from the 13th day of December, 1906, to the date of its repayment, wrongfully paid out by said trust company on the check, dated December 13, 1906, and raised from $100 to $2,100. The administratrix should be credited:

Amount of schedule C of original account, $744.80, less items of
$100 and $50, withdrawn by the administratrix on the hearing
before the referee, and less item of $374.80, for funeral ex-
penses, covered in schedule C of supplemental account....... $ 220 00
Amount of schedule C of supplemental account................ 399 80
Amount of schedule D of supplemental account................ 20 00
Amount wrongfully paid by Lincoln Trust Company on check
dated December 13, 1906.................................. 2,000 00
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　—————
　　　　Total ................................................. $2,639 80
　　　　Leaving a balance of ................................. $4,177 92

—together with said cause of action against the Lincoln Trust Company, which said balance is chargeable with the costs and expenses of this accounting.

The testimony taken before me, together with the exhibits offered in evidence, are hereto annexed and made part of my report.

Samuel Widder, for administrator.

Adrian T. Kiernan, for Title Guarantee & Trust Co.

Edward M. Burghard, for objector Joseph Orthaus.

THOMAS, S. Exceptions overruled, and referee's report confirmed. Tax costs and settle decree on notice.

---

(67 Misc. Rep. 32.)

### In re HUSSEY et al.

### (Surrogate's Court, Kings County. March, 1910.)

WILLS (§ 734*)—PAYMENT OF LEGACIES—INTEREST.

　　　Legacies payable on the death of a life tenant out of a trust estate begin to draw interest from the termination of the life estate, though the trust estate cannot immediately be converted into cash.

　　　[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1864; Dec. Dig. § 734.*]

In the matter of the judicial settlement of Levi Hussey and Albert D. Gantz, executors of Albert B. Hussey, deceased. Decree rendered.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Meyer. Auerbach, for executors.
William H. Blain, for Cora M. Crowell and other legatees.
Edwin M. Daniel, for legatees M. and E. Daniel.
Phineas Lewinson, for Helen L. Richardson and other legatees.

KETCHAM, S. The will under which the executors are settling their accounts devised the residue in trust to pay the income thereof to the testator's wife for life. It then directed that, upon the death of the wife, certain real estate included in such residue "be sold and converted into money, either at public auction or at private sale." The will then proceeded:

"Fifth. It is my will that from the proceeds of the sale of the aforemen-tioned real property [describing the land hereinbefore mentioned], when the same shall be sold, there shall be paid the mortgage thereon now held and owned by my wife with the interest, and from the residue of such proceeds and from my personal assets all of which shall be converted into money upon the death of my wife * * * I give and bequeath the following mentioned pecuniary legacies, all of which shall vest in interest in the legatees respective-ly, upon my death, to wit: [Here follow numerous general legacies, amount-ing to $15,000.]"

By other provisions of the will there was a gift to persons named of the balance of the residuary estate after the payment of the general legacies. The lands were brought to sale about 10 months after the death of the wife. In the meantime the accountants received $1,-399.10, rents of the lands aforesaid. At the death of the wife there was in the hands of the trustees personalty of a substantial amount, which was applicable to the general legacies. This was retained by them until after the sale, and the account shows the receipt of inter-est on bank balance after the death of the life tenant.

The claim of the general legatees that their legacies bear interest from the cessation of the life estate must be accepted. To deny this claim would augment the estate of the ultimate remaindermen by an amount of rents and interest actually received while the real estate awaited sale, and make a result which would be intolerable; for by no construction is it possible that any part of the income of the general remainder belonged to them.

"When in legal contemplation a legacy is due, the right thereto carries with it, even though actual payment is then impossible, the right to interest until such actual payment, and it is quite immaterial whether the assets of the estate have been fruitful or unproductive." Hoffman v. Pennsylvania Hos-pital, 1 Dem. 118.

This rule is ordinarily applicable to legacies for the payment of which no time is assigned by the will, and which, at common law, bore interest from the expiration of a year after the death of the tes-tator, and which, by statute, are now payable after the expiration of one year from the time of granting letters testamentary or of admin-istration. Code Civ. Proc. § 2721. But the same rule is equally ap-propriate to a legacy made payable in an event which may come to pass after the year prescribed by statute. Hence the sole inquiry, upon the answer to which the interest date depends, is: When, in legal contemplation, were the legacies in question payable?

This does not involve examination as to whether, at the death of the life tenant, these legacies were capable of actual payment. It assumes that an appreciable time might properly elapse before real or personal property could be converted into a form adapted to the discharge of the legacies. To adopt any other time than the moment that the life estate ceased would make the rights of the legatees dependent upon casual and indeterminate facts, such as the zeal or sloth of the trustees, the resistance of debtors of the estate, or the vagaries of the investment market. The law has always made use of every device of construction to save the interest date upon legacies from the shifting accidents of administration.

It may be said that the event contemplated in the will at bar as the event upon which the legacies became due was an actual sale of the real estate, and in this regard the words directing the payment of the legacies out of the proceeds of the lands "when sold" may be quoted. But like words have been held to affect the time of the actual solution of the legacies, and not the time when they became due in legal contemplation. Hutchin v. Mannington, 1 Ves. 366, approved in Dixon v. Storm, 5 Redf. Sur. 419, 422; Wood v. Penoyre, 13 Ves. 326, approved in Wheeler v. Ruthven, 74 N. Y. 428, 30 Am. Rep. 315.

The precise question here involved has been disposed of in this court by a decision which is held to be controlling. Matter of Runk, 55 Misc. Rep. 478, 106 N. Y. Supp. 851. The record of the will considered in the case last cited has been examined, and is found to coincide peculiarly with the will at bar.

If the case of Wood v. Penoyre, supra, be read with the attention which its approval by the Court of Appeals demands, its reasoning will be found to constrain the present result. Other decisions, upon varying facts, indicate that, whether the payment of the legacy be postponed by the will or not, interest is payable, not from the time when the estate is so converted that the legacies may be actually paid therefrom, but from the time when the legacies become legally due, though not practically capable of payment. Wheeler v. Ruthven, 74 N. Y. 428, 30 Am. Rep. 315; Matter of Rutherford, 196 N. Y. 311, 89 N. E. 820; Dixon v. Storm, 5 Redf. Sur. 419; St. F. X. Coll. v. Doherty, 5 Redf. Sur. 526.

Matter of Schabacker, 46 Misc. Rep. 219, 94 N. Y. Supp. 80, does not actively support the views herein relied upon; but there the source, method, and time of payment were to be derived from a provision by which, at the end of the life estate, the land was devised over to the executor in trust, "with power to sell and convey the same and divide the proceeds" among certain legatees, and to pay the balance to a person named. Mr. Justice Marcus, then surrogate, upon these facts said:

"The time for the conversion of the property has, therefore, been left indefinite by the will, and no particular time specified for the performance of the trust. It therefore seems that it was within the contemplation of the testatrix that the property must be sold, and that it was out of the moneys derived from such sale that the legacies were to be paid (and in fact no other assets existed), and since no time was specified for the performance of the trust a reasonable time, of course, would be allowed. It is urged that, since the power of sale is given for the purpose of paying the legacies, equity will

regard the land as actually converted, and therefore interest attaches to the legacy, the same as though the property had actually been sold immediately upon the death of the testator. The rule ought not to be applied to this case, since 'to divide the proceeds thereof' must mean an actual sale, and the fiction of equitable conversion ought not to apply, particularly in view of the absence of any claim that the trustee refused to sell or his good faith questioned."

This language would fairly distinguish the case cited from the case at bar. The controlling feature there was that no equitable conversion at the end of the life estate could be found, since the will left the time of the conversion indefinite. Here the will contained a peremptory direction for sale and conversion upon the death of the wife, and, of course, an equitable conversion was wrought. The intimation of the opinion quoted is clear that, if the "fiction of equitable conversion" could have been applied, another result would have been accepted. That opinion proceeded upon the finding that "it was out of the money derived from the sale that the legacies were to be paid" and supported this conclusion with the fact that "no other assets existed"; while in the case under inquiry there were, at the death of the life tenant, personal assets which were applicable in law and must be presumed to have been actually available for the immediate discharge of a large proportion of the legacies. The case cited is regarded as limited by its own facts.

In the adjustment of this account the legacies in question must have interest at the legal rate from the cessation of the particular estate.

Decreed accordingly.