WILLIAM S. LOVELL, as Executor, etc., Appellant, *v.* VIRGINIA A. QUITMAN et al., Respondents.

Under the provision of the Revised Statutes (2 R. S. 64, § 42) prohibiting the revocation or alteration of a will, save in the manner specified in said provision, an obliteration by the testator of a clause in his will, although with a purpose of revoking the same, is not effectual for that purpose. No obliteration can be effective unless it altogether destroys the whole will.

*McPherson* v. *Clark* (3 Bradf. 96), overruled.

(Argued March 6, 1882 ; decided March 21, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made November 23, 1881, which affirmed a decree of the surrogate of Ulster county, admitting to probate the will of Eliza A. Quitman.    (Reported below, 25 Hun, 537.)

The contestants claimed that the second and third clauses of the will had been revoked and canceled.

The material facts are stated in the opinion.

*J. Newton Fiero* for appellant. It is to be presumed that the erasures or obliterations were made by the testatrix *animo re-vocandi.* (*In re Clark,* 1 Tuck. 445 ; *In re Will of Claxton,* 2 Bradf. 334 ; *In re Will of Florence,* id. 281 ; *Idly* v. *Brown,* 11 Wend. 227 ; *Betts* v. *Jackson,* 6 id. 163.) It was not necessary to obliterate the entire will to work a revocation of a portion of it.    (1 Jarman on Wills, note by Bigelow [5th Am. ed.], sustains the proposition ; 1 Redfield on Wills, 327 ; *Brown's*

*Will,* 1 B. Monr. 57; 2 Greenleaf on Evidence, 681; *Sutton* v. *Sutton,* Cowp. 812; *Mence* v. *Mence,* 18 Vesey, 348, 350; *Robert* v. *Round,* 3 Hag. 548; *Larkins* v. *Larkins,* 3 Bos. & P. 16; *In re Kirkpatrick's Will,* 22 N. J. Eq. 463; *Jackson* v. *Holloway,* 7 Johns. 394.) An alteration prevents a revocation, but an obliteration is not the less available, because a residuum is created. (*Onions* v. *Fryer,* 1 Pease on Wills, 343; *Martus* v. *Sanders,* 8 Simons, 73; *Short* v. *Earl,* 4 East, 417; *Larkins* v. *Larkins,* 3 Bos. & P. 16; *Bigelow* v. *Gillott,* 123 Mass. 103.) Part of the will may be revoked or altered without obliterating the whole will. (*Clark* v. *Smith,* 55 Barb. 142; *Bigelow* v. *Gillott,* 123 Mass. 102, 104.) When a law antecedently to a revision of the statutes is settled, either by clear expression in the statutes, or adjudications on them, the mere change of phraseology shall not be deemed or construed a change of law, unless such phraseology evidently purport an intent on the part of the legislature to work a change. (Sedgwick on Interpretation of Statutes, 365; Maxwell on Statutes, 288; Potter's Dwarris on Statutes, 219; Maxwell on Statutes, 219; Wilberforce on Statutes, 262; Sedgwick on Statutes, 234, citing Vattel's Maxims; Wilberforce on Statutes, 20, 107.)

*S. L. Stebbins* for respondent. An obliteration or cancellation of a portion of a will is an equivocal act, the legal effect of which generally depends upon extrinsic proof of the accompanying circumstances indicating the intention. (*Brown's Wills,* 1 B. Monr. 57.) In order to effect a revocation, it is not enough that such will be burnt, obliterated or destroyed, but this must be done with the intent and for the purpose of revoking the same. (1677, 29 Car. 2, chap. 3, § 6; 1 Vict., chap. 26, 20, 21; Constitution of 1777, 35; 1 Kent's Com. 472, 473; Chapter 9 of the Laws of 1801, 1 Webster, 178; Chapter 23 of 1813, 1 Van Ness & Woodworth's Revision, 364, 365.)

Danforth, J. The surrogate found that the will in question was well executed, and at that time contained, among others, clauses numbered respectively "2d" and "4th;" that

subsequently the testatrix obliterated these clauses "with a purpose and intent" to revoke the same; that, notwithstanding this obliteration, they were not revoked, and remain in full force and effect, as before. The words are still apparent and legible, and he directed the whole will, including these clauses, to be admitted to probate. The General Term has sustained that decision, and, although we have given careful consideration to the interesting argument of the appellant, we see no reason to reverse their judgment.

. The appeal depends upon the true construction of the statute (2 *R. S., part* 2, *chap.* 6, *tit.* 1, *art.* 3, *p.* 64, § 42), which enacts that "no will in writing,   * * * * * * * * * * * * nor any part thereof, shall be revoked or altered, otherwise than by some other will in writing, or some other writing of the testator declaring such revocation or alteration, and executed with the same formalities with which the will itself was required, by law, to be executed; or unless such will be burnt, torn, canceled, obliterated or destroyed with the intent and for the purpose of revoking the same, by the testator himself, or by any other person in his presence, by his direction and consent; and when so done by another person, the direction and consent of the testator, and the fact of such injury or destruction shall be proved by at least two witnesses."

*First.* A literal and plain reading of these words defeats the appellant. There is language of prohibition, but it is so qualified as to amount to permission to revoke or alter a will, or any part thereof, by some other will in writing, or some other writing of the testator declaring such revocation or alteration; or by burning, tearing, canceling, obliterating or destroying the will, "for the purpose of revoking the same." Now, by the first phrase, the repentant testator is required to. write out the proposed alteration, select his witnesses and make to them an acknowledgment or declaration that the act is his; and, so far, the language permits but one inference or construction; that that act becomes effectual whether it relates to the whole will, or some portion only of the will.

. The second clause requires no such construction. The words

" or any part thereof," are omitted. The " will " itself is to be burnt, torn, canceled, obliterated or destroyed, not with an intent or purpose of " altering," but, as the statute says, " with the intent and for the purpose of revoking the same." And while these things may be done, either by the testator or by another person in his presence, under his direction, yet the statute provides, that " when so done by another person, the direction and consent of the testator, and the fact of such injury or destruction shall be proved by at least two witnesses." The injury relates to the effect of burning, tearing, canceling and obliterating.

We see, therefore, that, under the first clause, an act of alteration or revocation, if in writing, and under the last clause an act of destruction or of injury, unless by the testator himself, is required to be proved by witnesses. Can it be supposed that the statute intended a partial revocation or alteration, if done by the testator himself, should be effective, although no formality was observed? According to the appellant's construction, a dash of the testator's pen supplies the place of the formality required by the first clause, renders unnecessary the presence of two witnesses, and becomes effectual to the same extent as if the above provisions of the statute had been observed.

Such a conclusion is inadmissible. The dissimilarity of the two events, one requiring and the other dispensing with formalities the most solemn known to the law relating to the execution of papers, seems to permit but one answer to the appellant. The two acts cannot be deemed equivalents. To the same end is the general policy of the law, which aims to close the door against opportunities of fraud, and it would be unreasonable to suppose that the legislature intended a method by which the purpose of the testator could be defeated and the restrictions thrown around him at the time of executing the will designed to carry that purpose into effect, evaded.

The provisions of the statute applicable to wills (2 *R. S.*, *part* 2, *chap.* 6, *art.* 3, *title* 1, *p.* 63), which include the one before us, have in view not merely the convenience of the individual and his protection, but also the prevention of fraud and

perjury in reference to an act which becomes effective only after the death of the testator, and then concerns his devisees, his heirs, and indirectly the whole public.

*Second.* The appellant resorts to implication, and imports into the second clause of the statute words which are found only in the first, thus violating not only the method of the legislature, but the grammatical reading of the sentence. This last consideration would be of little importance if there was any thing in the statute from which it appeared that the apparent grammatical construction could not be the true one, but should control unless there is some strong and obvious reason to the contrary; as if we could see that the legislature had a different intention. But when we find in the first clause that the will, or any part thereof, can be altered by a writing only when duly attested, and in the second clause the words " or any part thereof " omitted, we are bound to give effect to the specific words actually used, and say that no obliteration can be effective as to part, unless it altogether destroys the whole will. We have no power to interpolate other words.

It is true, as the learned counsel contends, that there are cases lending some support to his contention; but they depend upon different statutes, or come from courts whose decisions are subject to review. In the courts of this State the decisions are conflicting. On one side is *McPherson* v. *Clark* (3 Bradf. 96), cited by the appellant; on the other is *Quinn* v. *Quinn* (1 Thompson & Cook, 437), and *Matter of Prescott* (4 Redf. 178). This is the first time the question has been presented to this court. And while we have examined the learned opinion upon which *McPherson* v. *Clark* (*supra*) was decided, we are not satisfied that the conclusion would promote justice, or secure the end which the legislature sought in enacting the provisions in question.

The course of legislation also sustains the conclusion reached by us. It has no doubt been held in England, as the learned counsel for the appellant claims, that such an obliteration as the one before us would effect a valid change, and not prevent the probate of the will. But the cases referred to by him, of

which *Swinton* v. *Bailey* (*supra L. R.*, 1 *Ex. Div.* 110), is the latest, were under a statute passed in the year 1677 (29 Car., chaps. 26, 36) declaring that "no devise,  \*  \*  \*  or any clause thereof, shall be revocable otherwise than by some other will  \*  \*  \*  or by obliteration of the same." It was held under this statute that a single clause could be removed and the remainder of the will stand ; and so it is laid down in 1 Jarman on Wills, page 134, where the author says : "If the testator draws a pen over part of the will only, a revocation is effected *pro tanto*, and the unobliterated parts remain in force." This observation, however, can be sustained only with reference to the above statute, and *Swinton* v. *Bailey* brought before the court a will made in 1828, and altered prior to 1837, at which date, as we shall see, a different statute went into effect. But the English statute already quoted found its place in our laws in 1787, entitled "An act to reduce the laws concerning wills into one statute." (*Laws of New York, Greenleaf's ed., vol.* 1, *p.* 387, § 3), and if now in force would require a construction similar to that given to the English statute (*supra*). The various modes of alteration or destruction apply to the whole devise or will, or any clause thereof. The order in which the events are named add force also to the construction, and so do the concluding words, which perpetuate the will and each clause until one of the two events occurs.

But this statute was repealed, and in 1801 (*Laws of N. Y., chap.* 9, § 3, *p.* 180), a law was passed substantially in the words afterward placed in the Revised Laws of 1813 (*vol.* 1, *chap.* 22, § 23), and now forming part of the Revised Statutes of 1830 (*supra*), and under which the question now before us has arisen. There is a plain difference between the words of the act of 1787 and those of the statute adopted in 1801, now in force as part of our Revised Statutes. The change is too great to have been accidental, and the omission of some words and the substitution of others, as well as the different arrangement of those remaining, require a construction of the present statute which would not have been permitted under the first. The construction contended for by the appellant compels the

insertion of words which the legislature have intentionally omitted, and makes the court the creator of a law, rather than its interpreter.

The mischief intended to be prevented by the observance of formalities in the execution of a will would reappear if the instrument could be altered in any less formal way, and as we are required by no case of controlling authority, or by continued usage, to give the statute an interpretation other than the one suggested by the plain meaning and grammatical structure of the section, we must hold with the surrogate and the General Term that the clauses obliterated from the will are still in force.

It is also to be observed that by the statute now in force in England (1 *Vict.*, *chap.* 26), entitled "An act for the amendment of the laws with respect to wills," passed July 3, 1837 (§§ 20, 21), a similar change is made in the laws of that country, and such an obliteration or other alteration is not now effectual unless executed in the manner prescribed for the execution of a will. (*Burgoyne* v. *Showler*, 1 *Rob. Ecc.* 5 ; *Cooper* v. *Bockett*, 4 *Moore's P. C.* 419.)

It would seem, therefore, from the modification of the English statute, as well as our own, that the construction we have adopted best expresses the intention of the legislature. It certainly gives effect to the actual words of the law, and we see no reason for extending it. A contrary doctrine would be fatal to the authority of documents, subversive of the rights of parties, and would completely abrogate the statute. (*Cooper* v. *Bockett*, *supra*.)

It follows that the judgment appealed from should be affirmed.

All concur, except ANDREWS, Ch. J., absent.

Judgment affirmed.