Matter of the Probate of a Paper Propounded as the Last Will and Testament of JAMES VANDERBURGH PARKER, Deceased.

(Surrogate's Court, New York County, May, 1917.)

**Wills — burden of proof as to revocation — probate — evidence.**

In most cases where a will is offered for probate the burden of proof of revocation rests upon the party asserting it.

Where the revocation of a will is sought to be established from the simple fact that the testator cut, tore or obliterated the text of the will either in whole or in part, *animus revocandi* must be established *aliter*.

In every instance of an implied revocation of a will by destruction of any kind, *quo animo* the act is done must be established *aliunde;* the mere physical act of destruction is too equivocal to effect a revocation *per se,* as such destruction may have been unintentional or it may have been by a stranger.

After testator's death a paper offered for probate as his last will, from which, after execution, a disposing clause had been cut out by some one unknown, was found at his residence in a sealed envelope bearing his private seal with an indorsement thereon in his handwriting to the effect that it was his last will and testament. The missing context was established by the evidence as was also the fact that during the life of the testator, from time to time, others had access to the will, but there was not an item of evidence to show that the excision of the missing clause was made by testator or that he knew of it. A formal rejection or renunciation of the legacies and devises contained in the missing clause, duly executed and delivered, by the only person affected thereby, was received in evidence, without objection, and her testimony as to the substance of the missing clause was confirmed by the testimony of the draftsman of the will. The adult family of testator consented to the probate of the paper with the complemented text of the missing portion. *Held,* that the will, including the missing clause as re-established by the proofs, will be admitted to probate, an exact copy of the text of the will to be annexed to the decree.

Surrogate's Court, New York County, May, 1917.    [Vol. 100.

PROCEEDING upon the probate of a will.

Miller, King, Lane & Trafford, for proponent.

Andrew S. Hamersley, special guardian, for Edith Herleston Parker et al.

Daniel J. Mooney, special guardian, for Henry P. Hutchinson et al., contestants.

FOWLER, S. The testamentary script offered for probate in this matter is defective in that clause tenth has been cut out by some one unknown after execution. The rest of the testamentary paper is intact. Secondary or testimonial evidence was offered in the first instance by proponent and taken to supply the missing script. This evidence establishes the missing context of the propounded paper. I shall again refer to this evidence somewhat more in detail. The adult family of the testator consent to the probate of the propounded paper with the complemented text of the portion missing. The only objection to probate is offered by the guardian appointed by this court. His plea presents a question of revocation and this is the only litigated issue now here for our consideration.

The testimonial evidence given in at the probate audience shows that during his lifetime others than testator had from time to time access to the testamentary paper now propounded. This is a very important fact in this cause. There is not an item of evidence which proves that the excision of the tenth clause was made by testator himself or that he knew of it. After testator's death the paper in the mutilated condition offered, it is true, was found in testator's New York residence, contained in a sealed envelope, bearing the private seal of testator and indorsed in his own handwriting as follows: " Last will and testament of

Misc.]    Surrogate's Court, New York County, May, 1917.

James Vanderburgh Parker," thus showing by his own declaration in writing testator's *animus non revocandi*, even if we assume that testator ever knew of the excision of the tenth clause or that he had cut it out himself, which is not anywhere established as a fact in the cause, nor is it from the facts disclosed even a legitimate presumption.

The testator was to most of us a well known citizen of advanced age residing in this city of New York in the winter season and at Newport, R. I., in the summer season. The testamentary paper was duly published and executed in Rhode Island.

The missing text of the testamentary paper as executed was testified to by Mr. Sheffield, of Rhode Island, the draftsman of the will, and confirmed by Mrs. Richmond, the only legatee and devisee affected by the missing part of the will. The missing text was thus testified to be as follows: " *Tenth.* I give, devise and bequeath to Evelyn K. Richmond, of Providence, R. I., and her heirs forever all my real estate situate in the City of Newport, Rhode Island known as the Sans Souci, together with all contents of the house and other buildings thereon, including my furniture, pictures, furnishings and automobiles and all other articles of personal property in or upon said premises or in use in connection with the same, and I also give and bequeath to said Evelyn K. Richmond the sum of thirty thousand dollars," which was followed by " $30,000 " in figures. The only person affected by the tenth clause executed and delivered a formal rejection or renunciation of the legacies and devises therein contained. It was not a surprise to those who knew the high character of Mrs. Richmond, the legatee and devisee mentioned in the missing portion of the document propounded, that she rejected and declined to accept the bequest and devise therein

Surrogate's Court, New York County, May, 1917. [Vol. 100.

contained. She evidently imagined that Mr. Parker, the testator, had altered his intention as to her, and in that event she did not desire to take, although in law she might be entitled so to do. Consequently her rejection was formally made. Such renunciation, duly executed, was admitted in evidence without objection, and as Mrs. Richmond had no longer any interest to subserve she was fully qualified to testify to the substance of the missing text and thus confirm the testimony of Mr. Sheffield, the well known Rhode Island lawyer who drafted and attested the will. But, as I suggested to counsel on the trial, Mrs. Richmond at common law was competent to prove the contents of the missing part of the will without such a renunciation. Every lawyer familiar with the jurisdictional history and practice of this court would at once remember Lord St. Leonards' lost will, where his daughter, the Honorable Miss Sugden, was held competent to prove the entire contents of her father's will, although she was the principal beneficiary. Indeed his lost will was allowed to be established by her testimony.

Before proceeding to the merits there is a preliminary point of practice to consider. The guardian of the infant contestants insists formally on the point that the *onus probandi* non-revocation rests on the proponent in this matter and that the burden is not on the infant contestants to make out their plea of revocation, but is on proponent to prove that the instrument propounded was not revoked. As causes in this court are allowed too frequently to go off on questions which, in my judgment, are not always germane to the merits, I must stop to examine the point thus presented, premising in a proceeding *in rem* to establish the constituents of a testamentary paper in this

court it makes very little difference, I apprehend, which party has the *onus* of going forward at a particular moment, and this is most frequently the meaning of the dubious term *"onus probandi."* *Onus probandi* has in the law of evidence two meanings, one active and the other passive. Actively it means the duty of going forward with evidence at a given moment. Passively it means the obligation on a party to offer preponderating proofs, or, in other words, a greater quantum of proof on the particular issue *sub judice.* The active meaning of going forward at a given moment is often highly inconsequential in this court, if in the end all the desired testimony is in any order whatever placed before the court. Such was the case here; all the desired evidence was placed before the court. It has been said by the most scientific and philosophic of all writers[*] on the Law of Evidence that the proof of alterations in documents is "intolerably perplexed by a quantity of jargon about presumptions and the burden of proof which often conceals the lack of any clear apprehension of the subject  *  *  *  and often disguises the true character of sound decisions."

On this plea of revocation it would seen that in this particular cause the guardian had the affirmative or the duty of going forward with proofs in support of the plea of revocation after proponent had rested. It was not incumbent on the proponent to prove in the first instance a negative, that there was no revocation of the executed instrument propounded. This conclusion is apparent from both analogy and precedent. That there is some uncertainty in our probate practice may be true. The former uncertainty of the proper practice in probate proceedings in this state after our independence of the crown is notorious. Dayton Sur. Pr. (3d ed.) 160; Willard Exrs. & Surr.

---

[*] Thayer Prelim. Treat. p. 527.

174, 316; Redf. Sur. (7th ed.) § 161. This notorious uncertainty was largely due to one mistaken premise, that for a period after our independence the theory and the original of our New York courts of probate and their former practice was of no authority whatever. There was manifested at first after independence a revolutionary desire to place the probate courts of the state and their procedure wholly on a statutory foundation, ignoring all that had gone before. The real reasons for this political propaganda I shall not stop to consider. The abortive attempt of the celebrated revisers of 1830 to accomplish this same general purpose was found, as we all know, to be utterly impracticable and their act was repealed. Then came a renascence, or rather a recrudescence, of the principle, that the common law adopted and continued by the Constitution was as applicable to proceedings in this court as to proceedings in any other court of the state. This reconstitution of the old common law of the province of New York applicable to this court gradually dispelled the illusion that there was no unwritten precedent whatever for the practice in this court in the absence of some statute of the state. Consequently the analogies and principles of the common law applicable to our probate courts began again to be revived and frequently invoked and applied in so far as our local circumstances permitted. See McClell. Surr. Pr. chap. 2, pp. 22, 23; Introduction to Surrogates' Practice in New York by Surrogate Kirtland; *Collier* v. *Idley,* 1 Bradf. 94; *Matter of Carter,* 74 Misc. Rep. 7; *Matter of Matthews,* 75 id. 453; *Matter of Connell,* 75 id. 578; *Matter of Martin,* 80 id. 19, and cases there cited; *Matter of Hermann,* 83 id. 286; *Matter of Gedney,* 142 N. Y. Supp. 157, 167. As thus revived, the existing common law rules, if properly applied,

respond to all actual requirements, complement the statutory rules, and place the court once more on the scientific and historical foundation intended by the framers of the first state Constitution.

The practice in New York in our probate courts prior to the revolution, and indeed immediately after it, followed closely the practice in the Prerogative Court of England, which furnished also the general outline for our procedure in the absence of local statutes directing the contrary. There the burden of proving revocation under the old practice was usually on the party pleading it. The general rule in the Prerogative Court in England was that the party pleading a defensive plea to probate, such as revocation, should make out the substance of his exception, plea or other objection (*Cutto* v. *Gilbert*, 9 Moore P. C. 131), and this, I may observe, continues to be the modern practice in the reformed probate proceedings in England. Dixon Probate, 356; Tristram & Coote's Probate Practice, Title " Defense, Revocation," 423, *et seq*. It makes ordinarily no difference, in the application of the general rule stated, that a mutilated will is propounded. If the missing parts are duly accounted for by proponent in the *prima facie* case, the probate proceeds in the usual manner and this seems to be the rule in this country. *Rhodes* v. *Vinson*, 9 Gill, 169; *Apperson* v. *Catrell*, 3 Port. 51.

That in this state the burden of making out a revocation is ordinarily still on the contestant pleading it seems to have been assumed in *Nelson* v. *McGiffert*, 3 Barb. Ch. 158, and this assumption was certainly warranted by that general rule of pleading which places the burden of proving revocation, in the absence of any special circumstances, on the asserter. Hawkins Wills, 9. As far as I am able to discern it is now the general rule of practice in contested probate pro-

ceedings in this court, that the *onus probandi* revocation usually rests on the contestant pleading it. *Mairs* v. *Freeman,* 3 Redf. 181; Redf. Sur. Pr. (7th ed.) § 187. There may be some expressions to the contrary in adjudicated cases intimating that on proponent rests the burden of proving that interlineations in a will were made before execution. Jessup Sur. Pr. (4th ed.) 263, citing *Matter of Carver,* 3 Misc. 567, and *Wetmore* v. *Carryl,* 5 Redf. 422. These latter adjudications, it should be noticed, seem to have been predicated of the fact that in this state alterations in a will are presumed to be made after execution. That this is now the law of this state is doubtful. *Matter of Easton,* 84 Misc. Rep. 1, and cases there cited. The ruling on burden of proof in this state in cases of interlineation, in any event, depends wholly on the presumption last mentioned. If there is no such presumption, the maxim " *Cessante ratione legis cessat ipsa lex* " is relevant and the general rule on the burden of proof again applies, even in causes involving interlineations. The adjudications cited by Mr. Jessup do not, in any aspect, seem to gainsay the general principle that *onus probandi* revocation ordinarily rests on the party pleading it in such a case as this. But if they do gainsay it, then we have only the usual dilemma, a choice of adjudicated authorities for and against a given proposition.

That in every instance where there is an assertion of revocation of a will the *onus probandi* is on the person asserting revocation in a probate court is a principle which should not be laid down in this court without reservation. Such a general doctrine might in the end prove too large and unfitted to the exigencies of particular cases. In this country the tendency is to lay down rules too largely. There are exceptions to most general rules. All I hold is that it may be safely

affirmed that in most cases where a will is duly pro-
pounded and those cited allege its revocation the
burden of proving in this court such revocation lies
not only in the first instance but on the whole case on
those asserting it.

But wherever the burden of making out a revoca-
tion in this case may in fact and in law now really
rest under our present practice, and even if the *onus*
was in this particular cause on the proponent to show
non-revocation of the propounded paper .writing
(which would seem to me illogical, anachronistic and
anomalous), then I hold that they sufficiently dis-
charged that *onus* in their *prima facie* case not dis-
proved, and consequently I think the matter is in
shape and ripe for adjudication on the merits, irre-
spective of the application of whatever may be the
true rule of the burden of proof in such matters as
this.

I therefore proceed to the merits. Implied revoca-
tions are now regulated by statute. In the old testa-
mentary law there had been so much uncertainty as
to what acts or things constituted an implied revoca-
tion of a will that the legislature deemed it expedient
to regulate for the future all implied revocations. The
Statute of Frauds (29 Car. II, ch. 3, §§ 6, 22) conse-
quently provided for implied revocations of wills.
This latter act always deemed in force in New York,
though not expressly re-enacted here until the year
1787, has been frequently re-enacted under the .state
government. 1 J. & V. 278; 1 Gr. 386; 1 K. & R. 364;
2 R. L. 365, § 3; 2 R. S. 64, § 42. The substance of the
legislation just mentioned, together with the substance
of all amendments and changes, is now contained in
section 34, the Decedent Estate Law, reading as fol-
lows: *"Revocation and cancellation of written wills.*
No will in writing  *  *  *  nor any part thereof,

Surrogate's Court, New York County, May, 1917.    [Vol. 100.

shall be revoked, or altered, otherwise than by some. other will in writing, or some other writing of the tes-tator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burnt, torn, canceled, obliterated ' or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by another person in his presence, by his direction and consent; and when so done by another person; the direction and consent of the testator; and the fact of such injury or destruction, shall be proved by at least two witnesses." Decedent Estate Law, Laws of 1909, chap. 18, § 34, formerly R. S. pt. 2, chap. 6, tit. 1, art. 3, § 42. I am aware of no other act of our legis-lature now regulating implied revocations of wills. *Vreeland* v. *McClelland,* 1 Bradf. 393, 417.

It has been properly held that the word " tearing " in the Statute of Revocations embraces an act of cut-ting out the text by a cutting instrument. See 1 Jar-man Wills (6th Am. ed.) 149; *Hobbs* v. *Knight,* 1 Curt. 768; *In bonis Cooke,* 5 N. of C. 390; *Clarke* v. *Scripps,* 16 Jur. 783.

It is an established rule in this state and in this court that where a revocation of a will is sought to be established from the simple fact that testator cut, tore or obliterated the text of the script of his will, either in whole or in part, *animus revocandi* must also be established *aliter.* *Delafield* v. *Parish,* 1 Redf. 1; *Mat-ter of Westbrook,* 44 Misc. 339; *Matter of Curtis,* 135 App. Div. 745, 747; *Matter of Van Woert,* 147 id. 483, 485; *Lovell* v. *Quitman,* 25 Hun, 537; affd., 88 N. Y. 377;*Burnham* v. *Comfort,* 108 id. 535, 540; *Matter of Kent,* 169 App. Div. 388. The same rule prevails in England (Theobald Wills, 43, 2 Phil. Ev. 197; *Bibb* v. *Thomas,* 2 Wm. Bl. 1044; *Brady* v. *Cubit,* Doug. 31),

and in the Irish Courts of Probate. Miller Irish
Probate Pr. 153.

In every instance of an implied revocation by
destruction of any kind *quo animo* the act is done must
be established *aliunde*. The mere physical act of
destruction is too equivocal to effect an implied revo-
cation *per se*. The destruction may have been unin-
tentional; it may have been by a stranger, therefore
*quo animo* it was in fact done becomes highly essen-
tial under the Statute of Revocations. *In bonis Tozer,*
7 Jur. 134; *In bonis Hannam,* 14 id. 558; *Clarke* v.
*Scripps,* 16 id. 783. What the rule is when there is no
evidence of intention is another point. The cases bear-
ing on the resolution of that precise question — what
is the rule in this state, when there is no direct evidence
of intention — are not many, and those existing are
not apparently of a very high order. But it is
unnecessary now for us in this matter to elaborate this
particular point, for here there is, in any event, direct
proof of an intention not to revoke the whole will and
there is no proof or presumption in this matter that
the testator himself excised the missing part of the
will which was accessible to so many others besides
testator himself. Under the circumstances there is
here no proof, or presumption whatever, of *animus
revocandi,* and therefore no implied revocation of any
kind has been established in any way. Had the will
been always in the testator's sole custody there might
have been a presumption that he cut out the missing
clause himself *animo revocandi.* But such is not the
case here.

In England a part of a will may be revoked by its
particular cancellation or destruction. 1 Jarman
Wills (6th Eng. ed.) 145. In many instances, not yet
considered in this state, this ruling is consonant with
the highest elements of a refined and precise system of

justice. Why it should be held otherwise anywhere I cannot conceive. What the rule is on this point in this state I shall not, however, consider, as it is now unnecessary. We are all familiar with the idea that it has been ruled by authority in *Lovell* v. *Quitman*, 88 N. Y. 377, that there can be no revocation of a part of a will by destruction of any kind. *Matter of Van Woert*, 147 App. Div. 484. But, as I said before, that precise point is not now necessarily in this cause and I will not consider it.

The effect of an intended revocation of a part of a will when the act of revocation does not comply with our statute now governing revocation of wills has, however, been frequently considered in this court and declared innocuous; the whole will as executed being then adjudged entitled to probate *non obstante* the intended revocation of a part. *McPherson* v. *Clark*, 3 Bradf. 92; *Matter of Prescott*, 4 Redf. 178; *Matter of Kent*, 169 App. Div. 391; *Matter of Curtis*, 135 id. 745. *McPherson* v. *Clark* states not only the old law on this subject of implied revocations, but it adumbrates the principle of the new statutory law. That is all it purports to do. It has been said that *McPherson* v. *Clark* has been overruled. That is not quite accurate. The superior courts rarely overruled Surrogate Bradford's statement of principles guiding his judicial decrees. They sometimes, and perhaps not infrequently, reversed his application of principles. But his extraordinary prevision and knowledge of his jurisdiction, as well as his pronounced intellectual superiority, in his own métier, made it difficult for an ordinary appellate court to overrule him. As Mr. Justice Story said of Chancellor Kent's judgments: "The Court of Errors appears to reverse you, but your statement of principle remains impregnable, as it is one of the eternal verities."

Misc.]   Surrogate's Court, New York County, May, 1917.

The notation and alteration on the will of a bequest to testator's servant, Ellen O'Dea, of $500 need not be noticed. The bequest, it seems, lapsed by her death before testator, and it is evident that testator made his notation to indicate that consequence. The notation may be ignored in the probate.

The decree will be for probate of the will propounded, including the tenth clause re-established by the proofs. Settle decree accordingly, annexing thereto an exact copy of the text of the will to be probated.

Decreed accordingly.