In the Matter of the Estate of LENA BESCHER, Deceased.

Surrogate's Court, Niagara County, June 19, 1928.

**Wills — probate — will consisted of three typewritten sheets — when offered for probate second sheet had apparently been removed and another in handwriting of testatrix substituted — destruction of second sheet did not revoke will — evidence as to contents of original second sheet was hearsay — evidence does not show contents of original second sheet — first and last sheets of will are admitted to probate.**

The testatrix executed a will which consisted of three typewritten sheets. When the will was found among her papers after her death, it was discovered that the second sheet had been removed and another in her own handwriting substituted. The act of the testatrix in substituting a second sheet did not constitute a revocation of the will, but it is apparent that the testatrix intended to alter her will.

Testimony offered by the husband of the testatrix as to the contents of the original second sheet was hearsay and inadmissible, but if that testimony had been admitted, it was not sufficient to show the contents of the original second sheet, especially in view of the fact that there was no evidence to corroborate the witness.

The first three clauses of the original will disposing of the property of the testatrix and the final clause of execution constitute a complete will and may be admitted to probate, notwithstanding the fact that the testatrix had destroyed the second page of the will.

PROCEEDING to probate will.

*Hopkins, Brim & Hopkins,* for the petitioner.

*Dempsey & Fogle,* for William Bescher, Elmer Lederhaus and Myrtle Bil.

*Allan E. Disinger,* special guardian for infants.

GOLD, S. Lena Bescher died in the town of Lockport, Niagara county, N. Y., on October 15, 1927.

It appears that on or about April 18, 1917, decedent made and executed a will consisting of three typewritten sheets. After her death an envelope was found among certain papers belonging to decedent on which were the words " Will of Lena Bescher." When the envelope was opened it was found to contain only the first and third typewritten sheets of the will executed on April 18, 1917. The second sheet had been torn out, presumably by the decedent, who alone had been in possession of the will. The first sheet contained clauses " first," " second " and " third," and the third sheet contained a clause designated as " lastly," wherein she appointed her husband executor and which also contained the attestation clause signed by the witnesses. In the place of the

second sheet which had been torn out, decedent had inserted in place and stead thereof a paper writing, made in her own handwriting, in which she provided for the disposition of her property to follow clause " third " of her will of April 18, 1917. She numbered the clauses in the substituted paper " fourth " to " eighth," inclusive.

This court is now asked to construe said paper writings and to determine whether or not they or either of them amount to a testamentary disposition by decedent of her property, and to determine whether or not said paper writings or either of them amount to a last will and testament of deceased, in whole or in part.

In the first place I find that the will executed on April 18, 1917, was executed in conformity with the statutes of this State and was a valid will.

That being true, did decedent, subsequent to the execution thereof, do any act whereby she revoked the will, or was her act in destroying the second sheet and substituting the other paper made in her own handwriting in place thereof, an attempt on her part to alter or change the will?

A review of the testimony reveals the fact that she did tell witnesses that she was going to make changes in her will. In my opinion she prepared said clauses " fourth " to " eighth," inclusive, believing that she could make such changes herself, or made the same with the intention of having them incorporated in a will which she intended to execute at a later date. In either event, the said clauses were not executed pursuant to our statutes and, therefore, have no probative effect and are null and void.

The destruction of the second sheet, however, did not revoke the will.

" It is a well-established rule that a will cannot be revoked unless the testator in some way shows his or her intention to so do." (*Matter of Westbrook*, 44 Misc. 339.)

The statute prescribes the manner in which a will can be revoked or cancelled. (Decedent Estate Law, § 34.)

That a will can only be revoked as provided by statute seems to be well settled. (*Lovell* v. *Quitman*, 88 N. Y. 377; *Matter of Hildenbrand*, 87 Misc. 471.)

" The ' will ' itself is to be burnt, torn, canceled, obliterated or destroyed, not with intent or purpose of ' altering,' but, as the statute says ' with the intent and for the purpose of revoking the same.' " (*Lovell* v. *Quitman, supra*, 380.)

" No obliteration can be effective as to part, unless it altogether destroys the whole will, and the authorities are clear and uniform that provisions of the statute dealing with revocation and cancel-

lation of wills * * * do not contemplate a revocation or alteration of any part of a will, except by some other will in writing, or some other writing of the testator declaring such revocation or alteration and executed with the same formalities with which a will itself was required to be executed. It is also well settled that the revocation depends on the testator's intention, and that where he has no disposition to revoke the whole will, but merely intended to destroy a clause or bequest already given, and the original language can be ascertained, the original will may be admitted to probate in the form and condition in which it was when originally executed." (*Matter of Van Woert*, 147 App. Div. 483, citing *Lovell* v. *Quitman*, *supra;* *Burnham* v. *Comfort*, 108 N. Y. 535.)

I am convinced that the testatrix intended to alter her will either at that time or at a future time, and not to revoke or destroy it.

Such being the case, and she having canceled or intended to cancel a part of the will, her act is without effect.

The remaining questions to be determined are as follows: Is there sufficient evidence before the court so that the original will can be admitted to probate and if not can the first and third pages which remain be probated as the last will and testament of decedent?

Has legal evidence of what was in the missing part been supplied, and if not will the missing part affect or alter the remaining parts so as to exclude the latter from probate?

The attorney who prepared the will testified that he could not remember what was in the missing part and that his stenographer had been unable to locate her stenographic notes with which to supply the same.

Evidence has been introduced by the witness John A. Bescher, husband of decedent, of a conversation had with the testatrix after the latter had returned to her home with the original will.

This question was asked: " I ask you if you know; you told me you didn't read the will yourself, but did you ever know anything about the contents of the will as originally drawn? "

He answered: " Well, she told me at the time she showed it to me after she wanted me to read it and I wouldn't read it." At this point the testimony was objected to as hearsay, and the objection overruled. He was then told to " go on " and continued his answer as follows: " At that time she said she was going to give me the use of it, and after I was gone my brother Will was to have the use and after that $200.00 to Walter Bescher * * * remainder to Elmer Lederhaus and Myrtle Lederhaus. That was the first will."

He was then asked: " Did she say to you anything about whether

that was what the second page contained? " and answered: " Well, she told me what I told you. She didn't tell me all of what it contained."

With reference to the same conversation the court asked the witness this question: " I understood you to say, Mr. Bescher, when Mr. Hopkins examined you, that you made certain statements as to what she said was in that will and I understood you to say that was not all she said," to which he answered: " She said I was to have the use of it." By the court: " You made certain other statements. Did I understand you to say you did not understand all that she said? " to which he answered: " I don't remember all that she said exactly."

Again he was asked: " Did she tell you that she was giving you the complete contents of the will, in that conversation that she had? " to which he answered " No, sir."

It appears from the testimony that Elmer Lederhaus and Myrtle Lederhaus are cousins of the witness.

Another answer which confuses the situation was given by the same witness. It took place at the time the testatrix was talking with the witness about changing her will.

The witness was asked this question: " And she wanted to change from the Meahl people to the Bescher people? " Answer: " Yes, sir."

If this was true it would indicate that in the original will some provisions had been made for the Meahl people, otherwise there would be no object in stating that she wanted to change from the Meahl people to the Bescher people. No evidence has been submitted as to what was in the original will with reference to the Meahl people. The latter were relatives, heirs at law and next of kin of the testatrix.

It was claimed by the special guardian that the above testimony was hearsay testimony, at least objection was made to a part of it upon that ground, and the court allowed the testimony to be taken. I am now convinced that the said testimony was hearsay testimony and that such testimony although received in evidence could not be used to jeopardize the interests of the infants in the matter.

Even if the testimony of the witness Bescher had been competent, in my opinion it was insufficient to establish the missing clauses of the will where there is no testimony of any kind to corroborate him and where it appears from his testimony that he could not remember all that was in the missing part. (*Matter of Kent,* 169 App. Div. 388, 393.)

" In jurisdictions where, like our own, attempted cancellation of particular clauses by their obliteration is ineffectual to revoke such

clauses, the weight of authority seems to favor the probate of that part of the will which remains, even if the contents of the obliterated parts cannot be ascertained, unless it can be seen that the missing parts would affect or alter the remaining parts * * *." (*Matter of Kent,* 169 App. Div. 393.)

The 1st clause of the original will directed the payment of testatrix's just debts and funeral expenses; the 2d clause gave all real and personal property to her husband John A. Bescher for and during the term of his natural life, and the 3d clause gave the same to any child or children that might be born to testatrix and her husband, if any, after the death of her husband.

I do not see how the missing parts would affect or alter that part which remains and, therefore, the latter is entitled to probate and I so find.

The first and third sheets of the will of April 18, 1917, are hereby admitted to probate as the last will and testament of decedent and the part of her property not passing by said clauses passes under the intestate laws of our State.

Let a decree be entered accordingly.