In the Matter of the Estate of ROBERT ENRIGHT, Deceased.*

Surrogate's Court, Kings County, February 6, 1931.

---

*Francis J. McManamy, Jr.,* for the petitioner.

*Kopald & Haft,* for the contestants.

*Edward L. Kelly,* special guardian for John F. McCarthy and William A. McCarthy, infants.

WINGATE, S. The question here presented arises upon a construction of the will of this decedent. The due execution of the instrument was proved on October 21, 1930, jurisdiction being retained solely for the purpose of passing upon the validity and effect of the directions contained in the document. The will is in holograph, written upon a yellow sheet of paper. Its general appearance and contents indicate that the testator had enjoyed limited educational advantages. The paper purports to give nine legacies of specific amounts aggregating $11,000 to as many different individuals, further directing the distribution of the remainder among three other persons and appointing the proponent as " Administrat " without bonds.

As was proved by the testimony of the subscribing witnesses taken before the court on October 28, 1930, the document, as originally executed, was altered by the obliteration of the amount of the legacy placed opposite the name of the proponent and the substitution therefor of the sum of $1,000. It is not contended that this change was made by any person other than testator himself.

The law in this State is entirely clear that in cases where alterations or erasures have been made by the testator subsequent to the execution of the will, the document in its original form is to be admitted to probate if such original condition can be ascertained.

A leading case on the subject is *Lovell* v. *Quitman* (88 N. Y. 377), in which the court says (at p. 381):

" But when we find in the first clause [of the statute] that the will, or any part thereof, can be altered by a writing only when duly attested, and in the second clause the words ' or any part thereof ' omitted, we are bound to give effect to the specific words actually used, and say that no obliteration can be effective as to part, unless it altogether destroys the whole will. We have no power to interpolate other words."

On the following page the language of the court continues: " The mischief intended to be prevented by the observance of formalities in the execution of a will would reappear if the instrument could be altered in any less formal way, and as we are required by no case of controlling authority, or by continued usage, to give the statute an interpretation other than the one suggested by the plain meaning and grammatical structure of the section, we must hold with the surrogate and the General Term that the clauses obliterated from the will are still in force."

In *Matter of Ackerman* (129 App. Div. 584) the court says (on p. 585): " The law of the case is that erasures, interlineations and additions made to a will after its execution do not change the will unless made with all the formalities necessary to a will, but the will has to be probated as though they had not been made." To like effect see *Matter of Wood* (144 App. Div. 259, 261); *Matter of Van Woert* (147 id. 483, 484, 485).

In view of this state of the law, considerable testimony was adduced before the court in an effort to determine the original sum inserted by testator as the amount of the legacy to the proponent. The obliteration was most thorough, so much so that, in one part thereof, the testator punctured the paper with the pen by which it was accomplished. The expert witness for the proponent testified that in his opinion the obliterated sum was $2,000, basing his conclusion upon a certain visible mark which, he contended, formed a part of one of the original figures. Arguing from this mark and comparing its slant with the slants in a large number of other figures admittedly made by the decedent in a memorandum book, he argued that the only figure in which this particular slant ever appeared was the figure " 2." In the opinion of the court, this contention was sustained and would lead to a determination that the original figure in question was a " 2 " followed by three ciphers, if it were established that the mark upon which the argument was based was a part of such original figure and not a part of the obliterating marks as asserted by the expert produced by other interested parties.

The court has carefully examined the obliteration and the adjacent parts of the will with a strong magnifying glass and is convinced that the particular mark on which the argument of the expert for the proponent was based is merely a continuance of some of the obliterating marks, and that the original figure inserted by the testator in the will is absolutely undecipherable.

The question which thereupon arises is what effect the impossibility of determination of the amount of the original legacy to the proponent is to have upon the balance of the will.

Obviously, under decisions hereinbefore referred to, the substituted figure does not constitute a valid gift to the legatee in question, since this portion of the document, as presently existing, was not made and published in accordance with the statutory requirements. Consequently, therefore, the legacy to Leo McCarthy must fall. He cannot take the substituted amount for the reason stated, and the sum originally inserted in the will cannot be given him as it is unascertainable. The important additional question then arises, as to whether the balance of the will can stand or must fail with the legacy to Leo McCarthy.

In this connection a careful search of decided cases yields only six determinations of possible relevancy.

The first is *Matter of Barber* (92 Hun, 489), decided by the Fifth Department of the General Term in December, 1895. The question there passed upon concerned an alleged holographic will which on its face was admittedly incomplete. Considerable testimony was adduced, also, as to whether or not the instrument had been duly executed. The document had been changed after its signing by the testatrix, but its original provisions were definitely ascertainable. The court reversed the allowance of probate by the surrogate, holding that the instrument had not been shown to be other than a mere memorandum not intended as a will. On page 497 a dictum is added to the effect that " where material provisions have been erased or altered, and the court cannot determine from the proof whether the alterations were made before or after execution, probate must be refused and the whole instrument rejected."

It will be observed that in this case there was no question under consideration similar to that in the case at bar, and that the sole matter decided really went no further than the question before the court in *Lovell* v. *Quitman* (*supra*).

In *Matter of Curtis* (135 App. Div. 745) it appeared that the will had originally been written on a number of sheets of paper, and that subsequent to the execution thereof the testator had torn off the bottom of one sheet. The surrogate admitted the remaining portion of the will to probate without taking evidence on the subject of the contents of the portion excised. This result was reversed by the Appellate Division which remitted the case to the surrogate for the purpose of taking testimony on this subject, saying (on p. 747): " No tearing or obliteration can be effectual unless it altogether destroys the whole will and was intended so to do."

At page 748 the following language is added: " It would be unfortunate if by reason of inability to produce sufficient satis-

factory evidence upon that point [*i. e.*, as to the contents of the portion of the will which had been torn off] it became necessary to deny probate altogether. (*Matter of Barber*, 92 Hun, 489.)"

It will be noted that the last quoted excerpt of the opinion is merely a dictum on the facts presented, which circumstance is further emphasized by reason of the reference to *Matter of Barber* as the sole authority for the position, since *Matter of Barber* determines no such thing and even its dictum, above quoted, is not broad enough to lend any weight to this additional dictum.

In *Matter of Hamlin* (124 Misc. 847), decided by this court, certain interlineations appeared in the will as propounded. Although evidence was taken on the point, it could not be determined whether they had been made prior or subsequent to the execution of the instrument. This court, therefore, felt constrained to deny probate to the entire instrument, since the interlineations materially altered the devolution of the entire estate and completely changed the testamentary plan which would have existed in their absence. Since it could not be determined that such additions had been executed upon a compliance with the statutory requirements, it would have followed, if they had been given effect, that the court might be admitting as a valid testamentary act, directions which had not been authenticated in a manner authorized by the statute. On the other hand, if these directions were actually included in the will when it was executed, their elimination would have amounted to a deletion of material portions of the will, changing the entire testamentary scheme. Since, therefore, decedent's testamentary plan would have been defeated if the court had chanced to guess wrongly, probate was impossible. Obviously, however, this case is not a pertinent precedent on the facts of the case at bar.

The precise question here raised has, however, been passed upon by the courts of this State in three instances. The leading decision is *Matter of Kent* (169 App. Div. 388). In that case certain portions of the will had been excised. The surrogate determined the contents of these missing clauses upon testimony which was improperly admitted, and probated the will with the addition of such clauses. It affirmatively appeared, also, that additional, competent testimony on that subject was probably unobtainable.

In reversing this result, the court said (at p. 391): "These conclusions will require a new trial where the contents of the parts excised from the will may be shown by competent evidence. In that case the will should be probated including the missing clauses as still a part of the will and unrevoked. (*Lovell* v. *Quitman*, 88 N. Y. 377, and cases collected in note to *Hartz* v. *Sobel*, 38 L. R.

A. [N. S.] 797.) In case such evidence is not forthcoming, then we think that part of the will which remains should be probated.

" The general form of the will is such that it is reasonably apparent that the missing 6th clause contained a money legacy, as did those which precede and follow it. The estate is large enough (over $30,000) to pay all the legacies and leave more than one-half for the residuary. There is an imperative direction to convert the real property into money and it must be construed as a will of personalty. If the 6th clause fails, [392] the only effect is to increase the residue. The part of the 10th or residuary clause which remains and was not cut out gives. one-quarter of the residue to the Syracuse Home Association and one-quarter to the Onondaga County Orphan Asylum.

" In jurisdictions where, like our own, attempted cancellation of particular clauses by their obliteration is ineffectual to revoke such clauses, the weight of authority seems to favor the probate of that part of the will which remains, even if the contents of the obliterated parts cannot be ascertained, unless it can be seen that the missing parts would effect or alter the remaining parts, while in jurisdictions where obliteration of a clause operates to revoke it, as in England, the remainder of the will stands exactly as if the revocation had been by codicil. (*Tarbell* v. *Forbes*, 177 Mass. 238; *Matter of Miles*, 68 Conn. 237; *Doherty* v. *Dwyer*, 25 L. R. Ir. 297; *Woodward* v. *Goulstone*, L. R. 11 App. Cas. [1886] 469; *Matter of Patterson*, 155 Cal. 626; 26 L. R. A. [N. S.] 654, and cases cited and reviewed in note.)

" It is evident that one-half the residue was given by that part of the 10th clause which is missing. If its contents cannot be ascertained, then there will be intestacy as to this one-half of the residue, for a lapsed or ineffectual gift of a portion of the residue does not fall into or become a part of the remaining residue. (*Kerr* v. *Dougherty*, 79 N. Y. 327; *Beekman* v. *Bonsor*, 23 id. 298; *Booth* v. *Baptist Church*, 126 id. 215; *Howland* v. *Clendenin*, 134 id. 305.) It would seem, however, that if the legacy in the missing 6th clause fails because its amount and donee cannot be ascertained, the effect should be that its unknown amount would sink into the residue as in the case of a lapsed legacy. (*Matter of Kings*, 200 N. Y. 189; *Langley* v. *Westchester Trust Co.*, 180 id. 326, and other cases cited in valuable note to *Galloway* v. *Darby*, 44 L. R. A. [N. S.] 782.) * * * .

"The testatrix's intention to dispose of some part of her estate by the 6th clause of her will fails simply because her intention in that respect cannot now be ascertained. If the legatee named in that clause had died before the testatrix, the amount of

her intended legacy would fall into the residue in accordance with her presumed intention. If the legacy cannot be paid because its purport cannot be ascertained, we think we must presume the same intention in respect of the residuary clause, and so that its amount, whatever it was, falls into the residue, of which one-half will be distributed to residuary legatees whose names still remain in the will. As to the other one-half, unless the missing part of the residuary clause is proved, there will necessarily be intestacy."

The same question was decided by Surrogate SLATER in *Matter of Fox* (118 Misc. 352), which again was a case where portions of a will had been bodily removed from it. The court in admitting the remaining portions of the will to probate said (at p. 353): " The law of the case is that erasures, interlineations, mutilations and additions made to a will after its execution do not change the will, unless made with all the formalities necessary to a will, but the will has to be probated as though they had not been made. The will as originally executed was never revoked and is still the will of the decedent. (*Matter of Stevens Will*, 3 N. Y. Supp. 131; S. C., *Stevens* v. *Stevens*, 6 Dem. 262.) The contents of the missing parts of the will have not been legally proven in this proceeding. If so, it would have been admitted to probate in its entirety. Even the substance of the missing portion has not been proved, and the paper which remains must be admitted to probate, because what is left is still her will and it has never been revoked. (*Matter of Ackerman*, 129 App. Div. 584; *Matter of Kent*, 169 id. 388; *Matter of Van Woert*, 147 id. 483.) "

A like result was reached in *Matter of Bescher* (132 Misc. 625).

To this court the reasoning of these three last-cited cases would seem to be uncontrovertible. Granted that the entire document was validly executed in the first instance, it unquestionably remains a valid will until some act specified by statute to revoke it has been accomplished by the testator. The statute here relevant is section 34 of the Decedent Estate Law which, so far as pertinent, reads: " No will in writing * * * nor any part thereof, shall be revoked, or altered * * * unless such will be burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself * * *."

In the present case it is entirely obvious that the testator had no intent to revoke the will as a whole, wherefore it must follow that such will remained in full force and effect until the time of his death, and must be enforced by this court in so far as it does not contravene any established rule of law and is physically capable of enforcement unless it affirmatively appears that a probate of the remaining parts only would subvert the original testamentary

plan. The extent to which it is enforcible is, on ordinary principles, merely a question of construction on the authorities reviewed in the former opinion in this case. All of its provisions with the exception of the legacy given to Leo McCarthy are legal and enforcible. The last named is not enforcible. The entire modern tendency of the law relating to the construction of wills is to uphold so much thereof as is lawful and capable of execution. As the Court of Appeals said in *Kalish* v. *Kalish* (166 N. Y. 368, at p. 374): " It is axiomatic that courts cannot make new wills for testators who have failed to make valid [375] wills for themselves. While recognizing the force of this truth courts have from the earliest times been compelled to choose between the alternatives of setting aside certain wills altogether, or of cutting out simply their void provisions. This necessity has led to the rule which is now firmly established in this state, that when the several parts of a will are so intermingled or interdependent that the bad cannot be separated from the good, the will must fail altogether; but when it is possible to cut out the invalid provisions, so as to leave intact the parts that are valid, and to preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total, as the case may be." This rule has been repeatedly and continuously followed since its enunciation. (*Matter of Terwilligar*, 135 Misc. 170, 181, 182, and cases cited; affd., 230 App. Div. 763.)

A determination that the legacies to others than Leo McCarthy were affected by the impossibility of execution of the one given him would result in declaring that this testator had died intestate as to his entire property. This would conflict with that most " fundamental rule of construction that intestacy will be avoided if at all possible." (*Matter of McGowan*, 134 Misc. 409, 411; affd., 228 App. Div. 779; affd., 254 N. Y. 513; *Matter of Weissmann*, 137 Misc. 113, 119; affd. on the opinion of this court, 232 App. Div. ——.)

It follows, therefore, that the entire will of this testator must be given effect except the legacy to Leo McCarthy and that will fail because its amount is unascertainable.

Enter decree on notice accordingly.