## In the Matter of the Estate of JAMES REUEL SMITH, Deceased.

Surrogate's Court, Westchester County, October 8, 1936.

*Wilson, Wager & Cornell* [*George W. Cornell* of counsel], for The Chase National Bank of the City of New York, petitioner.

*Hawkins, Delafield & Longfellow* [*C. O. Donahue* of counsel], for The American Museum of Natural History in the City of New York.

*Philip J. Dunn* [*Ralph O. L. Fay* of counsel], for the contestants.

*Lamar Hardy* [*David M. Wainhouse* of counsel], for the United States of America.

*DeForest, Cullom & Elder* [*Frederick M. Schlater* of counsel], for the Charity Organization Society and the Presbyterian Hospital.

SLATER, S. The will of this decedent was offered for probate. Objections were filed and later withdrawn upon stipulation of the parties. The contestants argued for revocation. The facts are so unusual that, even after settlement, I am filing this opinion.

The decedent was an old gentleman at the time of his death on November 12, 1935. He was an educated person and, in former years, had been engaged as private secretary to at least one man

of national prominence in the financial world. He knew stenography as well as typewriting. In his home in Yonkers he had collected many books on various subjects. He was a collector of clippings, papers and of written or printed documents. At the time of his death he lived with a servant and had his private secretary come in to assist him. The evidence is that he typewrote his own will upon his ancient Remington typewriter which is still in the home. The will was executed on the 5th day of August, 1918, before three witnesses then working in the business office of the New York Athletic Club in New York city, of which decedent was a member. One of the witnesses testified, one is dead, and the other is out of the State at the present time. The paper writing consisted of two sheets of paper pasted together at the top and having six small holes on the side for loose leaf binding. The two sheets of paper filed as his will were not of the same make of paper. The first sheet contains a water mark; the second sheet does not. This paper writing was found in an envelope on which was written " Papers for Executors " in a wooden box in the decedent's library. It will be designated as " A." The secretary, in making a search of the room for other papers, came upon the first sheet of a will in another place. This will be called " B." It was typed upon a Remington machine which carried a two-colored ribbon. The beginnings of the paragraphs of this sheet are typed in red ink, the remaining portions being typed in black. Four lines had been crossed out by drawing a red pencil through them, the four lines directing the burial of the willmaker in Woodlawn Cemetery. The paper writing " A," as produced, provided for his burial in Greenwood Cemetery. That was the only change.

The testimony of the witness to the will threw no light on the question because it was impossible for him to testify except as to execution.

Mr. Albert D. Osborne, an expert on questioned documents, was called to testify.

Section 34 of the Decedent Estate Law provides for the revocation and cancellation of written wills. No will in writing, nor any part thereof, shall be revoked or altered otherwise than by some other will in writing or some other writing of the testator declaring such revocation or alteration, and executed with the same formalities with which the will itself was executed; or unless such will is burned, torn, canceled, obliterated or destroyed with the intent and for the purpose of revoking the same by the testator himself.

If a revocation is effective in the instant case, it was done by the testator himself taking apart the two original sheets to the

paper writing executed on August 5, 1918, typewriting himself a new first sheet and pasting it on the original second sheet which contained the signature and the executed part. Can it be held that such performance by the testator falls within the law relating to statutory revocation?

There is no proof present that the willmaker intended to revoke the will. In fact, every inference is that he intended to leave it unrevoked.

In the admission of wills to probate, courts are met with erasures, mutilations, interlineations and additions made to a will, but such do not change the will unless they were made with the same formalities with which the will itself was required to be executed. (*Lovell* v. *Quitman*, 88 N. Y. 377; *Matter of Fox*, 118 Misc. 352.) The mutilation of a paragraph of a will does not revoke it and, where the contents or substance of a clause cannot be proven and where missing parts cannot be established, the remaining portion may be probated unless it can be seen that the missing parts of the will affect or alter the part that remains.

Such alterations will not invalidate the instrument if the original intention of the testator can be ascertained. (*Matter of Lang*, 9 Misc. 521, 528.)

In *Speake* v. *United States* (9 Cranch, 28) Judge TOREY said: " The fact, that there is an erasure or interlineation apparent on the face of the deed, does not, of itself, avoid it."

Any subsequent conversation or conduct by the testator cannot vitiate the will unless it is tantamount to a revocation. (*Stevens* v. *Stevens*, 6 Dem. 262.)

Where a testator, after the execution of his will, makes erasures and interlineations therein *without intending to revoke* and without re-executing the same, the will will be admitted to probate as originally executed. The cancellations, obliterations or destruction of a will with intent to revoke the same, as declared by the statute, refer to the whole will and not to a particular provision thereof. It was clear that the will as originally drawn was not intended to be revoked but only changed in the parts mentioned. Since this was not attempted to be done under the statute, the will must be admitted as it was originally executed. (*Matter of Prescott*, 4 Redf. 178.) In the case of *McPherson* v. *Clark* (3 Bradf. 92, at p. 98) the court said that the revocation depends on the testator's intention and " it has become a well-established rule not to give effect to a part of the testator's intention when effect cannot be given to the whole of it."

The effect of an unauthorized and unauthenticated erasure or interlineation in a will, made after the execution, is to render the

change sought to be made inoperative, leaving the will to stand in the form and effect before the change was attempted. The reason for such a rule in cases of wills is apparent. The statute has surrounded the execution of testamentary instruments with certain reasonable forms and ceremonies as a shield in the protection against fraud and imposition and the purpose of such precautionary measures might be entirely defeated if held applicable only to the original execution, leaving subsequent alterations and modifications, however important, to be made without such protection. (*Matter of Carver*, 3 Misc. 567, 570.)

In this State the burden of making out revocation is ordinarily on the contestant pleading it. (*Matter of Parker*, 100 Misc. 219, 225.) Implied revocations are now regulated by statute. (Dec. Est. Law, § 34.)

" It is an established rule  *  *  *  .that where a revocation of a will is sought to be established from the simple fact that the testator cut, tore or obliterated the text of the script of his will, either in whole or in part, *animus revocandi* must also be established *aliter* " (p. 228).

" In every instance of an implied revocation by destruction of any kind *quo animo* the act is done must be established *aliunde*. The mere physical act of destruction is too equivocal to effect an implied revocation *per se*. The destruction may have been unintentional; it may have been by a stranger, therefore *quo animo* it was in fact done becomes highly essential under the Statute of Revocations.  *  *  *  What the rule is when there is no evidence of intention is another point.  *  *  *  for here there is, in any event, direct proof of an intention not to revoke the whole will  *  *  *.  Under the circumstances there is here no proof, or presumption whatever, of *animus revocandi*, and therefore no implied revocation of any kind has been established in any way " (p. 229).

In *Matter of Curtis* (135 App. Div. 745) the court said: " No tearing or obliteration can be effectual unless it altogether destroys the whole will and was intended so to do." The same rule of law is set out in *Matter of Fox* (118 Misc. 352). *Matter of Parsons* (119 Misc. 26; affd., 236 N. Y. 580) sets out the rule of law as to how a will may be revoked. (See *Matter of Enright*, 139 Misc. 192; *Matter of Ackerman*, 129 App. Div. 584; *Matter of Wood*, 144 id. 259; *Matter of Van Woert*, 147 id. 483; *Matter of Kent*, 169 id. 388, 392; *Matter of Ridgway*, 141 Misc. 582.)

*Matter of Bescher* (132 Misc. 625) is a near case. On April 18, 1917, the decedent made and executed a will consisting of three typewritten sheets. After her death an envelope was found among

certain papers belonging to decedent on which were the words "Will of Lena Bescher." When the envelope was opened it was found to contain only the first and third typewritten sheets of the will executed on April 18, 1917. The second sheet had been torn out, presumably by the decedent, who alone had been in possession of the will. The first sheet contained clauses designated "first," "second" and "third," and the third sheet contained a clause designated as "lastly" and appointing an executor and containing an attestation clause signed by the witnesses. In place of the second sheet which had been torn out, the decedent had inserted a paper writing made in her own handwriting in which she provided for the disposition of her property to follow clause "third" of her will of April 18, 1917. She named the clauses in the substituted paper "fourth" to "eighth." The court found that the will executed on April 18, 1917, was executed in proper manner and that the testatrix intended to alter her will and not revoke or destroy it. Such being the case and she having canceled or intended to cancel part of the will, her act is without effect. Evidence was taken upon the contents of the original will. The court held that the missing part did not affect or alter what remained and, therefore, the latter, meaning the first and third sheets of the will of April 18, 1917, was entitled to probate and that the part of her property not passing by the said clauses passed under the laws of intestacy.

The law does not demand that the sheets of paper comprising a will shall be fastened together by clips, hooks or paste. In the instant case we find a paper writing, always in the testator's possession, prepared by him, in two different places in his library. If it were not for the new first sheet of the original paper writing, we would simply take the second sheet of paper, pin them together and submit them as decedent's will. Having proof that the first sheet of the paper writing was not in existence or made on August 5, 1918, it becomes the duty of the court to remove it from its present fastening to the original second page by pasting and to reannex the original first sheet to the second or executed sheet and thus complete in original form the paper executed by the decedent. We are left then with the four lines referring to the burial of the decedent which were stricken out by red lines and which, under the law above set forth, we may disregard. The most that can be said in behalf of the first sheet of the paper writing as filed is that it carried out the intent of the willmaker because it disclosed that he desired to be buried in Greenwood and not in Woodlawn Cemetery. Before the secretary found the original first sheet of the original will, decedent's remains found interment in

Greenwood Cemetery. The secondary sheet of paper was not without its value. He accomplished his intent. It is the duty of the court, within the law, to carry out his intention regarding the other provisions of the will.

I hold that the will was legally executed; that the testator did not revoke it; that the will consisting of two sheets attached together on August 5, 1918, should be reattached or repasted together and in such form the will is admitted to probate.

Proceed accordingly.