Bergan, J.
Entirely in his own handwriting Eichard M. Schell drew up his will and executed it with due formality. It was dated March 9, 1921. It was written on four double sheets of personal note paper, folded in book form so that each sheet had four pages, and fastened together with staples. The pages of the first three folded sheets were numbered 1 to 12; the four pages of the fourth and last sheet were not numbered.
*515 The testator died in Tompkins County, July 28, 1924; the will was admitted to probate by the Surrogate of that county on September 15, 1924. The instrument made some bequests and set up several trusts, among which was a trust for the benefit of the testator’s sister, Alice S. Porcher, who was his sole distributee. She also received some personal property under the will.
She was not, however, given any benefit in the residuary, nor had she any function in the administration of the estate. The New York Life Insurance and Trust Company was named the executor and it was also the trustee under the several trusts set up. The successor of the executor and trustee, the Bank of New York and Trust Company, entered upon the administration of the estate and of the trusts according to the directions in the will.
Twenty years after the probate, the trustee, since 1938 known as the Bank of New York, submitted to its attorneys the question whether in the administration of the trusts under the will it had a right to hold its own stock, a problem that had arisen from a decision made a short time before by the Court of Appeals. The inquiry caused counsel to re-examine closely the directions of the Schell will with reference to the retention of its own corporate stock by the trustee.
This examination by counsel in 1944 disclosed the fact that the will contained references to the “ Bank of N. Y. & Trust Co.” which had not come into existence until September 21,1922, a year and a half after the date of the will; and a reference to “ Bannister & Schell Incorporated ” which was not formed until April 14,1922, over a year after the date of the will.
Inspection of the will also disclosed that the third sheet, containing pages 9 to 12, was of slightly different dimensions than the others. All the writing, however, was that of the testator. The references to Bannister and Schell Incorporated were on pages 10 and 11; the reference to the Bank of New York and Trust Company was on page 11.
The last (unnumbered) sheet of the will contained the directions as to the residuary estate, the appointment of the trustee and executor, called correctly by the name it bore on the date of execution of the will, the “New York Life Insurance and Trust Company ”.
It was obvious that the sheet containing pages 9 to 12 had been written by the testator after the date of execution of the will and that this portion of the will was invalid. After reflec *516 tion on the subject, and some consultation with other lawyers, the attorneys for the executor and trustee disclosed the result of their inspection to the Surrogate in a conference with him on July 18,1944.
This was followed by a letter from the attorneys for the bank to the Surrogate at his request on August 17, 1944, in which their views in respect to what should be done were stated in writing. The attorneys felt that while they had a duty as officers of the court to disclose what they had then observed about the will to the Surrogate that this should not be reported to other persons who might be interested in the estate. The reasons assigned for this were that the will itself and an affidavit showing the date of merger and change of name of the executor and trustee were in the record of the Surrogate at the time of probate and there was hence data in the Surrogate’s office from which the discrepancy could have been noted; that there had been no fraud; that no ground existed for the vacation of the decree of probate after twenty years under the practice of the court based on mere mistake.
The Surrogate was of a different mind about the disclosure to the interested parties of what had been discovered about the will. The result was that the sister of the testator, Mrs. Porcher, commenced this proceeding to vacate the decree probating the will, and the various orders which followed it.
In the final amended form which it took, the petition in this proceeding may be summarized by saying that it alleged a failure of the Surrogate of Tompkins County to acquire jurisdiction because the residence of the testator was in New York County; that the value of the estate was from four to five hundred thousand dollars; that the defect of the will, if known, would have resulted in its complete failure and a consequent decree of intestacy; and that fraud was practiced by the executor in the probate of the will.
The sufficiency of the petition was attacked by motion on the ground, among others, that petitioner was barred by laches. The Surrogate held she was barred on that part of the petition which attacked the jurisdiction of the court; but that she was not barred on that part charging fraud to the executor in the probate proceedings. On appeal here the order of the Surrogate was affirmed (272 App. Div. 210) and an appeal taken by the petitioner to the Court of Appeals was dismissed (297 N. Y. 599). An application for leave to appeal to the Court of Appeals subsequently made here was denied (272 App. Div. *517 1081). An appeal by some of the respondents here from allow* anees made to the petitioner in this proceeding was decided in 1950. (277 App. Div. 922.)
In the appeal raising sufficiency of the petition it was held that the petitioner was foreclosed by laches on the question of jurisdiction of the Surrogate’s Court in Tompkins County because the petitioner, as the sister of the testator, had full notice of the proceedings and if Tompkins was not his place of residence she should then have raised that question.
On the claim of invalidity of the will and of fraud in its probate the decision was that petitioner was not guilty of laches as a matter of law, since the infirmities in the will had not been discovered by the executor or anyone else until twenty years after probate and that therefore petitioner would be under no disability from a failure to make such a discovery and assert it sooner. (See opinion of Presiding Justice Foster, then an Associate Justice, 272 App. Div. 210.)
The power of the Surrogate to vacate the decree after this lapse of time was distinctly affirmed, and it was left to be determined in the proceeding as questions of fact whether, if the will was invalid in whole or in part its probate was procured by fraud or mere error, and “ whether petitioner’s conduct under all the circumstances amounted to. laches ”. (272 App. Div. 210, 215.)
It is argued by the respondents on this appeal that petitioner is barred as a matter of law from the relief she seeks, but that question is no longer open here; it is the law of the case that the delay in the institution of the proceeding must be evaluated as a question of fact.
The Surrogate held hearings on the issues and dismissed the petition on the merits on the ground fraud had not been established. The Surrogate also was of opinion that petitioner had delayed too long in the institution of the proceeding; that other rights had ripened to the extent that it would be inequitable to reopen the decree admitting the will to probate. It is from his order of dismissal that this appeal is taken.
While the Surrogate has found that the petitioner herself was guilty of laches in not earlier instituting the proceeding, nothing adduced on the trial has changed the basis of the reasoning of Justice Foster addressed to the petition that if it took the bank twenty years to discover the discrepancy in the will, the petitioner could scarcely be required to have noted it earlier. While we think there was no undue delay on her part, this is not essential to our decision.
*518 A review of -the record before the Surrogate shows a complete failure to establish any fraud on the part of the executor bank, its officers, or its attorneys. There is a heavily reiterated argument that the bank and its attorneys ought to have discovered the changes made in the will after its execution; but there is not the slightest proof that they did recognize that such changes had been made until twenty years after the probate; or indeed is there any suggestion that either the Surrogate or anyone else who looked at the will contemporaneously with probate regarded it as having been changed after execution.
The original will is before us. Its physical appearance does not indicate internal changes after execution. The pages in dispute are slightly larger than the other pages, but they are of note paper of the same quality and of about the same size and are headed by the same engraved address which is on each of the other three folded sheets, “ 339 Lexington Avenue, New York”. The size of the writing is a little larger than some of the other pages, but both the size of the writing and the spacing between lines differ somewhat from page to page.
All the instrument is obviously in the same handwriting; the numbering of the pages and of the paragraphs is in unbroken continuity. It would have required a mind attuned to a directed search to have noticed that two of the corporate names used would not thus have been used at the date of execution. That one of the corporate names so used was an abbreviation of a new name of the executor itself adds little to the argument that it should have been discovered before. In its physical aspects the will had been made by the testator to look as if it were executed in the condition in which it was found.
A failure to discover a discrepancy like this is certainly not fraud, actual or constructive. Even a corporate executor need not see or know more than the prudent man in the same place of responsibility and we think the significance of the references in the will, depending on the correlation of two names to two dates would have escaped the notice of most executors and, indeed, of careful lawyers in the absence of some signal to attention. It is, of course, easy after a fact is known to point out what else could have been done to know it earlier; but the standard of what ought to have been known or done is not above the level of average human insight.
An additional claim of fraud made against the executor is based on a statement which the petitioner testified was made to her before probate by an officer of the bank in reply to an inquiry made by her. She testified she asked the officer whether *519 “ we could break the will ”, and he said no, that her brother ‘1 drew it up himself, it is legal and there is nothing to do ’ ’. There is no fraud in this. No one suggests that this officer or anyone else then knew of a discrepancy in execution and this expression of opinion was not only one that any reasonable man would make in response to such an inquiry, but as it will be demonstrated, the will could not be broken in aid of the petitioner even if the discrepancy had then been known.
The correspondence which the attorneys for the executor had with the petitioner contemporaneously with the probate proceedings, and in respect of the opening of the safe deposit boxes in search of a later will and in aiding her to identify personal property claimed as her own, shows consistently fair, considerate and professionally proper dealing with the petitioner.
The remaining ground for fraud is that the will was probated in Tompkins County. We are at loss to follow the argument. That is where the testator had voted in the years immediately preceding his death and where he had a residence. The will was just as available there for inspection as elsewhere and would have been as readily probated elsewhere as there. The petitioner made a personal examination of the will in the Tompkins’ Surrogate’s office.
The adding of the sheet of four pages would not have invalidated the will as a matter of law. The undisputed portions of the will, including the provision for disposition of the residuary and the appointment of the executor, would have been properly admitted to probate on the record that is before us and would not now be disturbed, even if the executor knew the'additional sheet was inserted after execution and concealed the knowledge from all interested parties.
No fraud of an executor in withholding his knowledge of such substitution would make any difference in the application of this rule. When the fact became known the rule would be applied. It would be the testator’s act that would guide the court, not the executor’s concealment of the act.
No one has questioned the validity of these undisputed portions of the will; it is argued by the petitioner, merely, that the changes attempted to be made by the testator after execution destroyed the properly executed portions.'
The rule is the other way. The alteration without statutory formality is ineffective, but it does not destroy the validly executed portion of the will unless a clear intention to revoke the will appears. It was said in Lovell v. Quitman (88 N. Y. 377, 382) that “ no obliteration can be effective as to part, unless *520 it altogether destroys the whole will ”. This being so, the uniform judicial policy has been to probate and carry into effect the valid and remaining portions of wills, so far as they ■are intelligible; to separate them from invalid substitutions and to disregard partial cancellations not following statutory directions.
The principle may be generalized by saying that in the absence of complete destruction of the will with intent to revoke, the valid portions will be carried out so far as they are ascertainable. Examples of this direction in one or another of its aspects appear in Matter of Tremain (282 N. Y. 485); Matter of Kent (169 App. Div. 388); Matter of Thomson (181 Misc. 385), and Matter of Smith (161 Misc. 194).
Here, of course, there is no difficulty in ascertaining the testator’s intent, unaffected by the changes made; and there is no suggestion of an intent on his part to revoke the will, either in the manner prescribed by statute or otherwise.
Unless there is an adjudication of intestacy, the failure of the invalid portions of the will here are of no interest to the petitioner. The bequests contained in the invalid portions of the will would become part of the residuary estate. Petitioner is not a beneficiary in any part of the residuary estate as provided by the will, and since the parties interested in the residuary make no complaint as to probate or administration, the effect of the changes made in the will requires no judicial action.
The factual and legal theories upon which petitioner seeks to vacate probate and adjudicate intestacy are chimerical and despite the labored record and numberless exhibits and papers presented to us, are quite groundless. The result reached by the Surrogate is the right one.
The order should be affirmed, without costs.
Foster, P. J., Brewster, Deyo and Coon, JJ., concur.
Order affirmed, without costs. [See post, p. 1155.]